**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Michael J. GUINAN,
Defendant–Appellant.**

No. 85–2866.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1986.

Decided Jan. 7, 1988.

Robert S. Bailey, Chicago, Ill., for defendant-appellant.

Gillum Ferguson, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, COFFEY, and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Defendant–Appellant, Michael J. Guinan, appeals his conviction of six counts of filing false income tax returns, in violation of 26 U.S.C. § 7206(1), and two counts of fraudu-

lent use of social security numbers, in violation of 42 U.S.C. § 408(g)(2). We affirm.

## I. Background

On April 26, 1984, a four-count indictment was filed charging the defendant with filing false income tax returns for the tax years 1977, 1979, 1980, and 1981, in violation of 26 U.S.C. § 7206(1).[1] On August 16, 1984, Guinan's longtime paramour and wife of seven months, Loretta Clarke Guinan ("Lori Guinan"), telephoned IRS Special Agent Patrick McDermott, told him that she and her husband had become estranged and she had filed for a divorce, and indicated that she wanted to provide evidence about Guinan's finances. During the remainder of August and early September, Lori Guinan met or spoke with Agent McDermott at least ten times. Although some of the information provided by Lori Guinan was self-incriminating, she was not promised immunity; she was told, however, that her cooperation would be considered in deciding whether she would be prosecuted. Based on his notes of his interviews and telephone conversations with Lori Guinan, McDermott prepared a written statement. Lori Guinan reviewed the statement three times. She went over the statement with Agent McDermott on September 19, 1984 for one-half hour, and again on September 20, this time for an hour. Finally, later that day, Lori reviewed the statement for about two hours with an Assistant U.S. Attorney. She was allowed to make changes in the statement and did make some minor revisions. Lori Guinan then signed the statement and read it under oath before a grand jury on September 20, 1984. In her grand jury testimony, Lori Guinan identified herself as the wife of Michael J. Guinan and stated that she was separated from and planning to divorce him. She stated that she had known Guinan since June 1976 and testified to various aspects of Guinan's expenditures and finan-

---

**1.** Section 7206 of Title 26 of the United States Code provides, in pertinent part:

"Any person who—

(1) *Declaration under penalties of perjury.*— Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ... shall be guilty of a felony...."

cial arrangements between that time and 1984. The next day, September 21, 1984, a superseding indictment was filed against Michael Guinan adding two counts of filing false tax returns for the tax years 1978 and 1982.

After her grand jury appearance, Lori Guinan met with Agent McDermott approximately five more times; she never recanted her testimony. During this time she retained an attorney and was promised immunity. McDermott last saw Lori Guinan on November 2, 1984. On November 6, Lori Guinan disappeared. After attempting unsuccessfully to locate her, on November 30, 1984, the U.S. Attorney's office gave notice to defendant's counsel that it intended to offer Lori Guinan's testimony at trial pursuant to Fed.R.Evid. 804(b)(5),[2] an exception to the hearsay rule.

On December 27, 1984, the defendant failed to appear for trial, and a warrant for

his arrest was issued. Guinan was apprehended in California in April 1985. In May of 1985 a second superceding indictment was filed adding two counts of perjury, in violation of 18 U.S.C. § 1623,[3] one count of failure to appear, in violation of 18 U.S.C. § 3146(a)(1),[4] and four counts of fraudulent use of social security numbers, in violation of 42 U.S.C. § 408(g)(2).[5]

On June 18, 1985, the government filed a motion to admit the grand jury testimony of Lori Guinan. The defendant responded with a memorandum of law in opposition to the government's motion, and a hearing was held on June 26, 27, and 28, 1985 regarding the admissibility of Lori Guinan's testimony under Rule 804(b)(5).

The trial court, ruling orally at the conclusion of the hearing, found Lori Guinan's grand jury testimony admissible. In reaching that conclusion, the court found that:

2. Rule 804(b) of the Federal Rules of Evidence provides, in part:

 "*Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: ...

 (5) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant."

3. Section 1623 of Title 18 of the United States Code provides, in part:

 "(a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same

to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

4. Prior to November 10, 1986, § 3146 of Title 18 of the United States Code provided, in part:

 "(a) *Offense.*—A person commits an offense if, after having been released pursuant to this chapter—

 (1) he knowingly fails to appear before a court as required by the conditions of his release...."

5. Section 408 of Title 42 of the United States Code provides, in part:

 "Whoever— ...

 (g) for the purposes of causing an increase in any payment authorized under this subchapter (or any other program financed in whole or in part from Federal funds), or for the purpose of causing a payment under this subchapter (or any such other program) to be made when no payment is authorized thereunder, or for the purpose of obtaining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled, or for the purpose of obtaining anything of value from any person, or for any other purpose— ...

 (2) with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person ...

 shall be guilty of a felony...."

1) notice to the defendant was adequate; 2) the government had made a satisfactory showing that the witness was unavailable; [6] 3) the statement contained evidence of facts material to the government's proof that the defendant's income was falsely reported on his tax returns; 4) due to Lori Guinan's relationship with the defendant, her statement was more probative than any other available evidence; 5) the interests of justice warranted admission of the statement into evidence; and 6) the corroboration offered in support of the statement was "substantial", and the statement was made voluntarily and under oath. The court also found that the defendant's counsel had ample opportunity to cross-examine Agent McDermott at the hearing regarding the grand jury statement and the circumstances under which it was prepared. Although the court expressed some concern about the form of the grand jury testimony —a statement previously prepared by Agent McDermott and read verbatim—it found that that format was used in order to organize material developed over a period of time.[7] In sum, the court concluded that the requirements of Rule 804(b)(5) were met, and the grand jury testimony was admissible under that Rule. The court did, however, excise portions of the statement that it found conclusory, irrelevant, or unduly prejudicial.

At the defendant's trial, the redacted version of Lori Guinan's grand jury testimony was read to the jury by a female Special Agent of the IRS. The jury convicted Guinan of six counts of filing false income tax returns, two counts of fraudulent use of social security numbers,[8] and one count of failure to appear. Guinan received an aggregate sentence of sixteen years in prison.[9]

On appeal Guinan does not challenge his conviction on the charge of failure to appear, but argues that his conviction on all of the other counts should be reversed because the admission of Lori Guinan's grand jury statement violated both the Federal Rules of Evidence and his Sixth Amendment right to confront the witnesses against him.

## II. Rule 804

Guinan contends that the trial court's admission of Lori Guinan's testimony violated the Federal Rules of Evidence. In support of that contention, he argues, first, that the admissibility of grand jury testimony must be determined under Rule 804(b)(1), rather than 804(b)(5).

■ Rule 804(b), under the heading, *"Hearsay exceptions,"* lists types of statements not excluded by the hearsay rule if, as in this case, the declarant is unavailable as a witness. The first four subsections of Rule 804(b) list specific categories of statements excepted from the hearsay rule, namely: 1) former testimony; 2) statements under belief of impending death; 3) statements against interest; and 4) statements of personal or family history. Rule 804(b)(5) then sets out a catch-all exception for "statement[s] not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness," provided the other requirements of subsection (b)(5) are met. The defendant argues, essentially, that since the statements at issue here

---

**6.** The parties stipulated in the trial court that Lori Guinan was unavailable for purposes of Fed.R.Evid. 804 and the Confrontation Clause of the Sixth Amendment.

**7.** At oral argument, defendant's counsel indicated that the defendant does not object to the form of the grand jury statement, stating that there is nothing unusual about it. We therefore do not consider what effect, if any, the form of the testimony might have on its admissibility under Rule 804(b)(5).

**8.** The remaining two social security counts were severed and dismissed prior to trial. Guinan

was acquitted by the jury on the two perjury counts.

**9.** The district judge imposed a sentence of thirty months in prison on each of the six false return counts, those sentences to run consecutively to each other, for an aggregate of fifteen years in prison; the judge imposed a sentence of one year imprisonment on the failure to appear count and each of the two social security counts, those sentences to run concurrently with each other but consecutively to the six false return sentences.

consist of grand jury testimony, they fall into the general category of "former testimony," and *are* "specifically covered by" exception (b)(1); [10] therefore, he argues, their admissibility must be tested only under that subsection, rather than under the catch-all provision, (b)(5). The government responds that the defendant waived this argument by failing to raise it before the trial court. In his reply brief, defendant points out that he did raise the issue in his memorandum in support of his motion *in limine* to exclude Lori Guinan's testimony. There, Guinan asserted, *inter alia*, "It is illogical to argue that the Federal Rules (804(b)(1) [sic] provide specifically that grand jury testimony is not admissible [sic] due to lack of confrontation, and then turn to 804(b)(5) and argue it is admissable [sic] under a general catch-all 'exception' rule." Defendant did not press the argument at the hearing six months later. Assuming that this sufficed, nonetheless, to bring the issue to the trial court's attention, this court has already decided it adversely to the defendant. In *United States v. Boulahanis*, 677 F.2d 586, 588 (7th Cir.) *cert. denied*, 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982), we explicitly stated, "Since grand jury transcripts do not come within one of the specific hearsay exceptions in Rule 804, they are admissible if at all only under the stringent criteria of 804(b)(5), the catch-all provision." [11] The trial court therefore properly considered the admissibility of the grand jury testimony under Rule 804(b)(5).

■ The defendant also contends, however, that even if Rule 804(b)(5) provides the proper test, the court erroneously concluded that Lori Guinan's grand jury testi-

mony met its requirements. In particular, he argues that the statement does not have "circumstantial guarantees of trustworthiness" equivalent to those of statements within the specified exceptions of subsections (b)(1)–(b)(4). We disagree.

"A trial judge has considerable discretion, within the parameters of the rules of evidence, in determining whether ... hearsay statements contain the necessary circumstantial guarantees of trustworthiness. See *United States v. Howard*, 774 F.2d 838, 845 (7th Cir.1985); *Huff v. White Motor Corp.*, 609 F.2d 286, 291 (7th Cir. 1979)." *United States v. Vretta*, 790 F.2d 651, 659 (7th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986). We find no error in the trial judge's exercise of that discretion.

In *Boulahanis*, this court affirmed the trial court's admission of the grand jury testimony of an unavailable declarant under Rule 804(b)(5). We found the requirement of "equivalent circumstantial guarantees of trustworthiness" satisfied because the declarant: 1) had testified before the grand jury under oath and subject to prosecution for perjury; 2) had not been pressured to testify; 3) was disinterested—"a mere bystander, with no axe to grind"; and 4) had given testimony that was corroborated by a tape of the conversation, and by testimony of eyewitnesses. *Boulahanis*, 677 F.2d at 588. On appeal, the defendant argues that the guarantees of trustworthiness present in this case are not equivalent to those noted by the court in *Boulahanis*. He focuses on the last two factors listed: the witness' lack of a personal interest and the degree of corroboration of the testimony.[12]

---

**10.** Rule 804(b)(1) of the Federal Rules of Evidence provides:

> "*Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

**11.** In his opening brief on appeal, defendant's counsel admits that, in *Boulahanis*, we considered the admissibility of grand jury testimony under Rule 804(b)(5). Indeed, since counsel also represented one of the defendants in *Boulahanis*, he goes on to inform us that the same argument he makes here was made, and rejected by the court, in that case. Yet, apparently believing that we gave the argument short shrift in that case, he invites us to reconsider it. Given our explicit statement in *Boulahanis* disposing of the issue, we decline the invitation.

**12.** Defendant may also be making an oblique

We note first that, although we rely on our previous decision in *Boulahanis,* we do not suggest that the factors listed there are all either exhaustive or necessary prerequisites to admissibility under Rule 804(b)(5).[13] Every case must be analyzed on its own facts. *See, e.g., Howard,* 774 F.2d at 845–46 (relying on factors other than those listed in *Boulahanis*). Thus, for example, we have found hearsay statements admissible despite the fact that the unavailable declarant was not a disinterested bystander. *See Vretta,* 790 F.2d at 656–59 (declarant was the murder victim and had himself been under investigation by the District Attorney's office).

The crucial question in considering the effect of Lori Guinan's personal interests on the admissibility of her testimony under Rule 804(b)(5) is not whether she was a "mere bystander" but whether she had a motive to lie that calls the trustworthiness of her statements into question. The defendant speculates that Lori Guinan had two such motives—vindictiveness due to the failure of her marriage and a financial interest in overstating her husband's assets. We admit that this argument gives us pause. Lori Guinan volunteered to give evidence against her husband, when, after only months of marriage, the two became estranged and she filed for divorce. Certainly, it seems plausible that her motive for volunteering to testify may have been personal vindictiveness. But it does not follow that any motive for volunteering to testify other than a pristine sense of civic duty is also an incentive to manufacture *false* testimony. Moreover, the grand jury statement read to the jury at trial included Lori Guinan's statement that she had filed for divorce so that the jury could take that fact into account in weighing the credibility of her testimony, and the defendant himself testified at trial and therefore had an opportunity to testify to any discord between himself and Lori Guinan that might have discredited her testimony. Considering these facts and the absence of any additional indication that the declarant had an interest in testifying *falsely,* we do not believe that the mere fact that the declarant volunteered to testify after her marriage to the defendant deteriorated so seriously calls into question the credibility of her testimony that admission under Rule 804(b)(5) was erroneous.

Defendant does suggest, in conclusory fashion, that in this case there was an additional motive for Lori Guinan to testify falsely, claiming, "Her own pecuniary interests militate toward the exaggeration of Defendant's financial resources." It is not apparent to us, however, and the defendant does not explain, how Lori Guinan would have benefited by testifying as she did. As the government points out, her grand jury testimony was substantially limited to a period some years prior to her marriage and largely concerned the defendant's expenditures rather than his assets. Moreover, it is unclear what the value of a federal conviction for filing false tax returns for tax years prior to the parties' marriage would be in proceedings in a state divorce court. We are, therefore, unpersuaded by defendant's argument that Lori Guinan's "pecuniary interest" so seriously undermines the trustworthiness of her testimony that it is inadmissible under Rule 804(b)(5).

attack on the first factor listed (testimony under oath and subject to prosecution for perjury) when he attempts, in his brief, to analogize Lori Guinan's testimony to the out-of-court affidavit found inadmissible by the Fourth Circuit in *United States v. McCall,* 740 F.2d 1331 (4th Cir. 1984). The evidence admitted in this case was, in fact, testimony given before a grand jury, with all the formality that that entails; it was given under oath and subject to prosecution for perjury.

**13.** Some courts have relied on other circumstances to determine the trustworthiness of hearsay testimony. Some of them are present in this case. For example, Lori Guinan related only facts within her knowledge and personal observation, and she never recanted her testimony. *See United States v. Marchini,* 797 F.2d 759, 763–64 (9th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1288, 94 L.Ed.2d 145 (1987); *United States v. Barlow,* 693 F.2d 954, 962 (6th Cir.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). The district court, however, did not rely on these additional factors, and we find it unnecessary to do so to reach the conclusion that the testimony at issue was admissible.

This brings us to defendant's main contention, namely, that Lori Guinan's testimony was insufficiently corroborated. He relies on the distinction, drawn by this court in *United States v. Silverstein*, 732 F.2d 1338 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985), between "corroboration" and "mere consistency."

This case, however, is both legally and factually distinguishable from *Silverstein*. First, in *Silverstein* the court was not called upon to address the admissibility of prior testimony under subsection (b)(5) of Rule 804. The issue was the admissibility of a statement against interest under subsection (b)(3) in the particularly "suspect" circumstances, *see id.* at 1346, where a statement inculpates the declarant and exculpates a criminal defendant. Rule 804(b)(3) explicitly states that such testimony "is not admissible unless corroborating circumstances *clearly* indicate the trustworthiness of the statement." (Emphasis added.) Thus, while the court in that case did emphasize the distinction between evidence which is *"clearly* corroborative" and that which is "merely consistent," *Silverstein*, 732 F.2d at 1347 (emphasis in original), it is not clear that it was applying the same standard of corroboration as we apply under Rule 804(b)(5).

Moreover, even if the legal standard applied is the same, *Silverstein* and the present case are not comparable factually. In *Silverstein* the *only* evidence offered to corroborate the declarant's confession to the murder of a fellow-inmate was "the mere fact that [the declarant] was out of his cell shortly before [the victim's] corpse was discovered." *Id.* at 1347. The court indicated that the requirement of clear corroboration would have been satisfied if "there was other evidence linking [the declarant] to the crime." *Id.*

In this case there is substantial other evidence linking the defendant to the expenditures that Lori Guinan testified he had made. Independent evidence was introduced at the June 26–28 hearing that corroborated Lori Guinan's testimony that the defendant supported her and gave her an allowance and grocery money, that they traveled extensively, and that the defendant, through various financial arrangements, purchased two condominiums during the relevant period. Moreover, independent evidence was introduced regarding the defendant's intent in filing false tax returns.

Lori Guinan's testimony that the defendant supported her and gave her an allowance and grocery money was corroborated by the fact that she never filed an individual income tax return, that there was no substantial activity in her personal bank account, that she stated to her parents and in a loan application that the defendant was her sole source of support, that checks payable to Lori were drawn on bank accounts associated with Guinan, that checks payable to Treasure Island Stores, (where Lori testified she did most of her grocery shopping) were drawn on the defendant's account, by the statements of a secretary-receptionist in the defendant's office to the effect that Lori came to the office to get cash from Guinan, and by the statement of the defendant's law clerk that Lori had complained to him that she was not receiving a sufficient allowance. Lori Guinan's testimony regarding the couple's extensive travels was corroborated by the logbook for one of the defendant's boats, by the defendant's own sworn statement in a divorce proceeding, by entries on a calendar kept by the defendant's ex-wife, by telephone records of the defendant's office showing collect calls from the Caribbean, by credit card records, and by the statements of the defendant's receptionists, secretaries, law clerk, and friends.

Lori Guinan's testimony regarding the purchase of the two condominiums was corroborated by the title history of one of the units (Unit 3805, Harbor Point Condominiums), which showed that title passed in 1977 to a trust whose beneficiaries were Samuel M. Matyas and Michael Guinan, and then, in 1980, through a "straw man" to a trust whose sole beneficiary was Guinan. There was evidence that the defendant obtained a mortgage on the property, and the funds generated, though payable to Matyas, were traced only to Guinan.

The unit was purchased primarily with cashier's checks obtained from four Chicago banks on a date on which the defendant had gone to one of his safe deposit boxes, and an overpayment into escrow in connection with the purchase was endorsed and cashed by the defendant. Although Samuel Matyas was listed in trust documents as the owner of the unit, labor union records, tax returns, a loan application, and documents filed in Matyas' divorce proceeding do not indicate that the property ever belonged to Matyas. Moreover, the statements of the defendant's law clerk, his former secretary, and a member of the Harbor Point Condominium Association indicate that Guinan lived in the condominium under the name of Samuel Matyas, and Lori Guinan's dental records and driver's license were in the name "Lori Matyas". According to a receptionist in the defendant's office, bills relating to the condominium were sent to Michael Guinan's office, and an attorney who rented the unit from the defendant in 1981 stated that she sent the rent checks to Guinan, not Matyas.

Lori Guinan's testimony regarding the second condominium, Unit 5108, was similarly corroborated. The title history of Unit 5108 shows that in 1980 the property was transferred to a trust whose sole beneficiary was Samuel Matyas, and in the event of Matyas' death, Michael J. Guinan. Guinan was given power of direction over the trust. The property was later transferred under fictitious names, which, according to both expert and lay opinion, the defendant signed on the deeds. Bank records showed that although Samuel Matyas' name was listed as payee, Guinan purchased the four cashier's checks which were used to make a deposit on Unit 5108. Guinan also purchased all but one of the cashier's checks used to pay for the unit at closing; that check was requisitioned in the name of Guinan's ex-wife, but there was evidence that the signature was not hers and the name was misspelled. (Lori Guinan testified that she had purchased one cashier's check at the defendant's direction.) Moreover, Samuel Matyas' tax and employment records do not reflect his ownership of Unit 5108. However, money orders, cashier's checks and mortgage information relating to Unit 5108, together with documents bearing the names Samuel Matyas and Alfonse Gonzalez (one of the fictitious names under which the property was transferred) were found among Michael Guinan's papers. In addition, in 1981, a mortgage was obtained on Unit 5108 in the name of Alfonse Gonzalez. The funds were traced to a bank account in the name of Guinan's deceased half-brother, George Weber. When Guinan was arrested, he was carrying identification bearing the name "George Weber", and various law clerks, secretaries, and friends of the defendant knew him to use that alias. The money was further traced to Guinan, Moonraker (a corporation associated with the defendant), another "Weber" account, and to a purchase of $100,000 in Krugerrands by Guinan in the name of George Weber.

Finally, Lori Guinan's testimony regarding the defendant's intent was corroborated by the statement of one of the defendant's former secretaries to the effect that Guinan had remarked to her that he would "beat the IRS," and by the statement of another former secretary that she had helped Guinan destroy various records that might disclose receipts to the IRS.

Despite all of this, Guinan argues that the crucial aspect of Lori Guinan's testimony—the *amount* of money she testified he had expended on the various items—is not corroborated. At least in this case, where there is nothing facially suspicious about the amounts the witness testified to, and indeed many of them seem fairly conservative, we do not believe that Rule 804(b)(5) requires that degree of corroboration. At oral argument, defendant's counsel admitted that a court cannot require that every detail of an item of hearsay testimony be corroborated before admitting it under Rule 804(b)(5); the proponent of the evidence will always be relying on "a little more" than is independently corroborated. The question, according to counsel, is "how much more?" We need not, and indeed cannot, provide a general answer to that question. We can and do, however, hold

that the additional information contained in Lori Guinan's testimony that was not independently corroborated—i.e., the exact dollar amounts—in the context of this case, did not go so far beyond that which was corroborated that the trial court's decision that the testimony was sufficiently trustworthy to meet the requirements of Rule 804(b)(5) was erroneous.

### III. Confrontation Clause

 The defendant finally contends that the admission of Lori Guinan's grand jury testimony into evidence violated the Confrontation Clause of the Sixth Amendment to the United States Constitution, which provides that in criminal prosecutions "the accused shall enjoy the right ... to be confronted with the witnesses against him...." Our determination that the grand jury testimony was admissible under Rule 804(b)(5) does not immediately dispose of the constitutional issue. For, while "the hearsay rules and the Confrontation Clause ... 'stem from the same root,' ... the two are not equivalent." *Vretta*, 790 F.2d at 660 (quoting *Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970)); *see also, United States v. Keplinger*, 776 F.2d 678, 695 (7th Cir.1985), *cert. denied*, 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). Thus, evidence that is admissible under a hearsay exception may still be violative of the Sixth Amendment. On the other hand, although any use of hearsay testimony literally denies the defendant an opportunity to confront a witness against him if the hearsay declarant is unavailable to be cross-examined, this court "has been unwilling to hold that the admission of hearsay evidence is a per se violation of the confrontation clause." *Boulahanis*, 677 F.2d at 589. Instead, in a case such as this, where the witness is unavailable, the court enquires whether the hearsay bears "sufficient 'indicia of reliability.'" *Keplinger*, 776 F.2d at 695 (quoting *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1986)).

 On appeal, the defendant stresses the importance of cross-examination in testing the reliability of testimony. While we hardly disagree, it is also clear that the constitutional "test [is] 'not whether there was an opportunity for ... cross-examination, but whether there are adequate indicia of reliability to justify the placement of the hearsay statement before the jury.'" *United States v. Feldman*, 761 F.2d 380, 387 (7th Cir.1985) (quoting *United States ex rel. Haywood v. Wolff*, 658 F.2d 455, 463 (7th Cir.), *cert. denied*, 454 U.S. 1088, 102 S.Ct. 649, 70 L.Ed.2d 625 (1981)). Thus, even absent an opportunity for cross-examination, where the government has "made a strong 'showing of particularized guarantees of trustworthiness' concerning the statements," their admission is not barred by the Confrontation Clause. *Howard*, 774 F.2d at 846 (quoting *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539), *quoted in Vretta*, 790 F.2d at 660. "Under this Court's test derived from *Roberts*, statements are [constitutionally] admissible even where there was no cross-examination if it is clear (1) that the declarant actually made the statement in question; and (2) there is circumstantial evidence supporting its veracity." [14] *Feldman*, 761 F.2d at 387. Here, the challenged evidence consists of transcripts of grand jury testimony read at trial; the accuracy of the transcripts is not challenged. The first requirement is therefore met. The second requirement is satisfied as well. Given our previous discussion of the guarantees of trustworthiness present in this case—in particular, the fact that the testimony was given voluntarily under oath and was substantially corroborated by other independent evidence, *see Boulahanis*, 677 F.2d at 589—we conclude that the admission of Lori Guinan's grand jury testimony did not violate the Sixth Amendment.

---

**14.** In his reply brief, the defendant suggests that the Supreme Court's recent opinion in *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), indicates that some higher standard of corroboration applies. That case, however, dealt with the particular problem of co-defendants' confessions, which the court termed "presumptively unreliable." The court there required indentity on all key points between the codefendants' statements because of the special problems inherent in that situation.

## IV. Conclusion

We are satisfied that there are present in this case sufficient indicia of trustworthiness to meet the requirements of both Rule 804(b)(5) and the Sixth Amendment. The defendant's convictions are therefore

AFFIRMED.