**UNITED STATES of America, Plaintiff,**

v.

**Jose Dionisio Suarez ESQUIVEL, Defendant.**

**Crim. No. 78–0367–07–AER.**

United States District Court, District of Columbia.

Sept. 5, 1990.

Eric Marcy, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Paul Goldberger, New York City, Edward Sussman, Washington, D.C., for defendant.

## MEMORANDUM

AUBREY E. ROBINSON, Jr., Chief Judge.

Before the Court are several pretrial motions. Both defendant and the government move for discovery. Defendant also moves for a bill of particulars, for additional peremptory challenges, to bar *in limine* the admission of evidence by the government under Federal Rule of Evidence 404(b), and to take the depositions of certain individuals in Chile. The government moves *in limine* to bar evidence or questioning of witnesses regarding the earlier acquittals of others indicted with defendant, and to bar evidence regarding a recorded telephone conversation in which one of its witnesses discussed the earlier trial. The government also moves that the Court allow the prior testimony of an additional witness, now deceased, into evidence. The Court heard oral argument on July 31, 1990 and the parties have briefed the issues extensively. The Court rules as follows:

I. *Defendant's Motion for Discovery and for a Bill of Particulars*

Defendant requests a bill of particulars specifying the overt acts the Government alleges carried out the conspiracy charged in the indictment, all co-conspirators' names and precise participation, conversations, meetings, and goals, etc. The purpose of a bill of particulars is to "ensure that the charges brought against a defendant are stated with enough precision" to permit the defendant to comprehend the offense, prepare his defense, and, if necessary, raise the claim of double jeopardy should the government attempt a retrial on the same charges. *See United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir.1987). If, however, the indictment adequately details the charges, or the information requested is otherwise available, then no bill of particulars is required. *Id.*

The Court believes that the indictment, as supplemented by the voluminous information provided in the record in the two previous trials of Guillermo Novo Sampol ("Guillermo Novo") and Alvin Ross Diaz ("Ross") sufficiently specifies the charges and evidence against defendant. The defendant is adequately on notice of the nature of the charges against him, and can prepare his defense accordingly. To the extent defendant's motion requests information in addition to that already provided or otherwise available, it will be denied.

As the Court understood the parties at oral argument, both defendant and the government appear to have largely resolved their discovery requests by agreement. Where it has not provided information or material, the government has declared that items requested by defendant do not exist. Three issues remain for the Court to resolve. The government denies that it must submit a list of its witnesses' names and addresses, a list of all property seized in this matter (whether or not it will be introduced at trial), and lastly, any statements by government witness Michael Townley regarding his alleged participation in the assassination of Carlos Prats in the Republic of Argentina.[1]

■ As for the witness list, whether the government must provide one is a matter falling within the Court's sound discretion. *See United States v. Madeoy*, 652 F.Supp. 371, 375 (D.D.C.1987). Some of the factors for consideration are the needs of the defense in preparation for trial, possible intimidation of witnesses and the intrinsic reasonableness of the request. *See id.* (citing cases).

■ The first and last of these do not apply squarely in defendant's favor. The government's case in this matter has been aired extensively in two previous trials. The government's evidence does not appear to be particularly complex. Defendant's

fear of possible new witnesses testifying to out-of-court identification, according to the government at oral argument, is unfounded. Lastly, the prospect of witness intimidation is not so remote as to tip the scales in defendant's favor. The government has proferred that its new witnesses maintain a genuine fear of retaliation. The Court will deny defendant's request for the list; it nonetheless reminds the government of its promise to invite its witnesses in good faith to speak with defendant's counsel prior to trial.

■ Next, pursuant to Federal Rule of Criminal Procedure 16, defendant asks that the government "[p]rovide a list of all property seized in this matter whether or not it is to be introduced at trial." Rule 16(a)(1)(C) provides for defense inspection and copying of "books papers, documents, photographs, tangible objects, buildings or places" in the government's possession or control, and which are material to the preparation of the defendant's defense, will be used in the government's case-in-chief, or were obtained from or belonged to defendant.

The government is well aware of its obligations under Rule 16 and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Court assumes that it has complied fully with the mandates imposed on it. Beyond this, defendant has made no showing of materiality as to any specific item or items of property and there is no basis for granting his blanket request. As it is framed, the motion for a list of property seized by the government will be denied.

■ Lastly, defendant wishes to cross-examine the government's primary witness, Michael Townley, regarding his alleged participation in the assassination in Argentina of Carlos Prats, a Chilean exile. At the second trial of Guillermo Novo and

---

**1.** The Government also declined to provide a list of the contents of the Letelier briefcase, United States documents relating to the attempted extradition of Contreras and Bravo and Central Intelligence Documents regarding Michael Townley. Defendant did not press these requests at oral argument. In any event, the trial

court ruled in the earlier trials that these materials were not relevant, and the Court now sees no justification for a departure from those rulings. If defendant insists upon additional *in camera* review of these materials, the Court will consider the request at that time.

Ross, the Court ruled that those defendants had not established an adequate foundation that Townley had in fact participated, and barred cross-examination on the subject. The Court of Appeals affirmed. *See United States v. Sampol*, 636 F.2d 621, 656 n. 21 (D.C.Cir.1980). Because of statements in a book authored by a former attorney for the government in this case, defendant now asserts that an adequate foundation exists to consider the killing relevant to Townley's credibility and the benefits he derives from his agreement with the government.

This new material adds little to the analysis, and the Court of Appeals decision in *Sampol* supports a finding once again that the evidence of Townley's involvement in the Prats incident is tenuous. It also does not appear that the events are relevant. In addition to the evidence found to be lacking by the trial court and the Court of Appeals earlier, defendant adds third-hand hearsay, portions of a book containing accounts by the authors about assertions Townley and others allegedly made about Townley's participation. The Court has no basis to assess the credibility of the primary or secondary declarants' statements. This material does not persuade the Court that an adequate foundation for Townley's involvement exists.

Moreover, this evidence is not admissible under Rule 608(b) to undermine Townley's credibility. "Aside from the tenuous link between the alleged crimes and Townley's capacity for truthfulness, *see United States v. Young*, 567 F.2d 799, 803 (8th Cir.1977), *cert. denied*, 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786, this evidence would [be] plainly cumulative" given that Townley will confess his role in the Letelier slaying. *Sampol*, 636 F.2d at 657 n. 21. The evidence also fails to assist the defense in exploiting the government's plea agreement with Townley. "[I]t is somewhat misleading to characterize the provision [of the agreement] on Townley's foreign activities as a benefit conferred by the government. Because the government generally would have no jurisdiction to investigate Townley's alleged criminal activity around the world, it gave up nothing by declining to seek information about such activities." *Id.* at 660.

Defendant has not argued that any other circumstance has changed since the Court of Appeals' ruling and has not otherwise justified a departure from it by this Court. Consequently, defendant's request for discovery into, and for permission to cross-examine about, the Prats slaying will be denied.

## II. *Defendant's Motion for Additional Peremptory Challenges*

■ In support of his motion for an additional number of peremptory challenges, defendant cites Federal Rule of Criminal Procedure 24(b). The Rule clearly does not apply, there being a single defendant in this case. Defendant is correct that the granting of additional challenges lies in the discretion of the Court, discretion which the Court exercises to deny the request. Defendant's claims of unusual publicity and the potential unfavorable portrayal of the CIA are unpersuasive. A great deal of time has passed since the events charged took place. To the extent the problems identified by defendant remain, they can easily be addressed by an adequately sized pool of potential jurors. This motion will be denied.

## III. *Defendant's Motion In Limine Regarding Rule 404(b) Evidence*

■ In order that he might testify without threat of unfairly prejudicial cross-examination about his prior bad acts, defendant moves for a pretrial hearing and ruling on the admissibility of such evidence. Federal Rule of Evidence 404 provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Ev. 404(b). In addition, however, Rule 403 permits the exclusion of evidence where "its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed.R.Ev. 403. Defendant submits that the latter rule will likely apply to evidence of other crimes the government alleges that he has committed.

The government's response includes a proffer of facts about defendant's relationship with alleged coconspirator Michael Townley, Townley's dealings with DINA (Chilean Intelligence) and the Cuban Nationalist Movement ("CNM"), as well as the previous use of materials and equipment by that group in attempting to carry out an assassination plan in Mexico similar to the homicide charged in this case. This proffer satisfies the Court that the evidence should be admitted, at least with respect to the government's case-in-chief. It simply cannot be said that the prejudice of this evidence outweighs its probative value, let alone in a "substantial" way.

The evidence in the government's proffer is highly probative of intent, plan, preparation, and motive. The Court of Appeals agreed with this analysis with respect to defendant's alleged co-conspirators. *See United States v. Sampol,* 636 F.2d 621, 659 (D.C.Cir.1980) (evidence of Mexico mission admissible under Rule 404(b) since it "illustrated why DINA solicited the help of the Cuban Group, and showed how the relationship between Michael Townley and the CNM began and matured."); *see also United States v. Williford,* 764 F.2d 1493, 1499 (11th Cir.1985) (evidence of other acts necessary to explain context, motive or planning of crime is admissible if "linked in time and circumstance with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.").

The Court will reserve ruling on the permissible scope of any cross-examination of defendant, as it is not possible at this juncture to determine what will be made relevant by his direct testimony. If necessary, the Court will hold a hearing during trial, prior to cross-examination, to decide this issue.

**IV.** *Defendant's Motion for an Order Granting Defendant the Right to Depose Certain Witnesses in Chile and for the Court to Issue a Request for the Assistance of the Judiciary of Chile*

Defendant seeks leave to depose three individuals in Chile, Manuel Contreras, Pedro Espinoza and Lilliana Walker. Contreras and Espinoza are co-defendants who have been fugitives since the indictment was handed up. Walker is an unindicted co-conspirator. Defendant proffers that "[t]he testimony of these three witnesses will show that DINA and the Chilean government planned and directed the murder of Letelier and that DINA had the resources and its own agents in the United States to carry out the killing of Letelier." Defendant also believes that the deposition testimony will contradict the probable testimony of Townley.

Federal Rule of Criminal Procedure 15(a) governs defendant's motion. It provides as follows:

Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may ... order that testimony of such witness be taken by deposition....

Rule 15(d)(1) continues, however, that "in no event shall a deposition be taken of a party defendant without that defendant's consent...."

The burden rests with the movant to show the necessity of preserving a prospective witnesses' testimony by a deposition. *See United States v. Adcock,* 558 F.2d 397, 406 (8th Cir.), *cert. denied,* 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). Materiality of the testimony and the unavailability of the witness are the critical factors. *United States v. Ismaili,* 828 F.2d 153, 159 (3d Cir.1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988). In the criminal context, a defendant typically demonstrates the "exceptional circumstances" necessary for success on a Rule 15(a) motion by some preliminary showing that the testimony will exculpate him. *See*

*Guam v. Ngirangas,* 806 F.2d 895, 897 (9th Cir.1986); *United States v. Wilson,* 601 F.2d 95, 97 (3d Cir.1979); *United States v. Ontiveros–Luceros,* 621 F.Supp. 1037, 1038 (W.D.Tex.1985).

Defendant here has not carried his burden of showing materiality as to any of the three proposed deponents, and failed to show the unavailability of Walker. Defendant has provided no specific information about the probable testimony these witnesses could offer, other than unsubstantiated speculation that it will exculpate him. In fact, the government proffers that Contreras and Espinoza have consistently denied their participation in the Letelier bombing. With regard to Walker, she has not been indicted in this case and apparently faces no other criminal charges in the United States. There is no evidence whatsoever that Walker is unable or unwilling to attend trial in the United States. *See generally Ismaili,* 828 F.2d at 160.

In any event, Contreras and Espinoza are co-defendants, and defendant has not shown that they consent to the giving of testimony. *See, e.g., United States v. Cassese,* 622 F.2d 26, 28–29 (2d Cir.1980); *Ontiveros–Luceros,* 621 F.Supp. at 1039. Clearly they maintain a Fifth Amendment privilege in the United States. The Rule requires consent, and defendant has not provided it. On this ground alone, defendant's motion must be denied.

V. *Government's Motion In Limine to Exclude Evidence or Questioning Relating to the Acquittals of Guillermo Novo and Ross*

 In 1981, Guillermo Novo and Alvin Ross Diaz were acquitted in this Court of counts one through five [2] of the indictment

on which defendant is now to be tried. The government asks the Court to bar any reference by defendant to these verdicts. The government argues that evidence of the earlier acquittals is both inadmissible hearsay and irrelevant.

Defendant counters that the government intends to offer evidence of his flight and fugitivity. He argues that if the Court allows this evidence to go to the jury,[3] he should be permitted to demonstrate his state of mind while a fugitive, and this showing necessarily includes his knowledge that his alleged co-conspirators were found not guilty of the charges he himself faced. The Court agrees that defendant's knowledge of the acquittals is relevant to show his state of mind during a portion of his fugitivity—evidence the jury may consider. Also, the acquittals' status as hearsay is overcome by the state of mind exception to the hearsay rule. *See* Fed.R.Ev. 803(3).

Finally, the Court does not believe that the probative value of this evidence is substantially outweighed by the possibility of unfair prejudice to the government. Indeed, what prejudice exists can be minimized by appropriate jury instructions. The Court's discretion on this point is broad, *see United States v. Irvin,* 787 F.2d 1506, 1517 (11th Cir.1987), and it holds that defendant should be entitled to challenge the government on the issue of flight with evidence that he was aware of Guillermo Novo's and Ross' acquittal.

VI. *Government's Motion In Limine to Exclude Evidence or Questioning Relating to the Townley–Etchepare Telephone Conversation*

 In the midst of the first trial of Guillermo Novo, Ross and Ignacio Novo

---

**2.** Specifically, Novo and Ross were found not guilty of conspiracy to murder a foreign official (Orlando Letelier), murder of a foreign official (Orlando Letelier), first degree murder (Ronni Moffitt) and murder by the use of explosives to blow up a vehicle engaged in interstate commerce (Ronni Moffitt and Orlando Letelier).

**3.** In his opposition to the government's motion, defendant briefly contends that the value of the flight evidence is outweighed by the potential for prejudice. Evidence of flight is admissible

as indicative of a guilty mind where there is an adequate factual predicate creating an inference of guilt of the crime charged. *United States v. Hernandez,* 857 F.2d 50, 52 (1st Cir.1988); *United States v. Grandmont,* 680 F.2d 867, 869 (1st Cir.1982). In this Court's view, the factual predicate here is quite adequate. Moreover, any prejudice to defendant does not appear to be especially unfair; he may make his arguments as to the proper weight to be afforded the evidence directly to the jury.

Sampol, government witness Townley placed a telephone call from the office of an Assistant United States Attorney to a friend in Chile, Gustavo Etchepare. The call was secretly recorded by unknown individuals, and a transcript of the conversation indicates that Townley made numerous, at times inadvisable, statements about the trial judge, the jury, witnesses and counsel. The government moves preliminarily to exclude any evidence about, or reference to this telephone call.

The Court of Appeals reversed the convictions of the other defendants partially because the defense had been denied an opportunity to cross-examine Townley about the call. According to the court, the defense had a reasonable basis for believing that Townley had made statements during that conversation bearing on his credibility and which could lead to the discovery of exculpatory evidence. *Sampol,* 636 F.2d at 662.

> Because the court barred all inquiry into the call, we have no way of knowing what an examination of Townley in this area would have revealed. At the retrial, appellants should be permitted to use the defense transcript in order to refresh the recollection of the witness or to impeach him or for any other proper purpose. Townley will be free to admit or deny that he made particular statements to Etchepare, and he will be able to offer such explanation as may be appropriate.

*Id.* Nevertheless, in order for the recording or transcript themselves to come into evidence, the defense had first to establish its authenticity. *Id.* At the defendants' retrial, the trial court ruled that Townley could be cross-examined about the conversation, except with regard to his disparaging remarks about the Judge and jury. The defense was permitted to inquire about Townley's proposal that unnamed individuals threaten the District Judge to hasten his withdrawal from the case. No exculpatory evidence emerged from cross-examination.

The Court of Appeals' opinion is instructive, but as that court itself admits, it had

no way of knowing what cross-examination would produce. This Court is presented with different circumstances. The earlier defendants were unable to elicit any testimony from Townley about the call which tended to show their innocence or lead to exculpatory evidence. The Court will not permit inquiry about the conversation as a search for evidence tending to prove innocence.

Nevertheless, the Court of Appeals believed that the transcript provides a reasonable basis to believe that Townley made statements bearing on his credibility as a witness. *See Sampol,* 636 F.2d at 662. The government urges exclusion on the ground that reference to the call will be excessively prejudicial. The court above, and the trial court on remand apparently thought otherwise, and this Court is bound by that judgment. The Court will permit inquiry by defendant on cross-examination of Townley whether he made the telephone call and, assuming he again admits doing so, into the areas permitted by the trial court on retrial of Guillermo Novo and Ross, *viz.,* those sections of the transcript that do not contain disparaging remarks about the Judge or jury, but including the remarks at page 3 of the transcript, lines 20–28. As noted by the Court of Appeals, Townley may offer an explanation of his remarks. The government's motion *in limine* will be denied insofar as it seeks to prevent this inquiry.

As for admission of the recording or transcript itself, the Court agrees with the government that they cannot possibly meet the test of authenticity. Townley has stated that the tape is incomplete, and his recollection is bolstered by the Federal Bureau of Investigation report indicating that the recording is not an original and has undergone some editing. The Court is persuaded that a reasonable probability exists that the recording, and therefore the transcript as well, are incomplete and inaccurate. *See United States v. Haldeman,* 559 F.2d 31, 107 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), *quoted in United States v. Slade,* 627 F.2d 293, 301 (D.C.Cir.1980), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66

**442**

L.Ed.2d 495 (1980). They are simply untrustworthy, and will be excluded from evidence.

VII. *Government's Motion for Admission of Statements and Testimony of Deceased Witness Jose Barral*

 An individual named Jose Barral stated on several occasions that in September 1976, he had two meetings with defendant and at one of these meetings, he provided a blasting cap to defendant. Barral made these statements to the F.B.I., to the grand jury which indicted defendant, and at both trials of defendant's alleged co-conspirators. Barral is now dead. The government asks the Court to admit his prior statements, though hearsay, into evidence.

To succeed, the government must identify an exception to the rule against hearsay, as well as hurdle the Confrontation Clause of the Constitution.[4] The government relies on three subsection of Federal Rule of Evidence 804(b). First, Rule 804(b)(1) allows

> testimony given as a witness at another hearing of the same or a different proceeding . . . if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect testimony.

Second, Rule 804(b)(3) admits statements which when made, were

> so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Rules 804(b)(1) and (3) are really no assistance to the government. Though counsel for defendant Suarez, in his capacity as counsel for a co-defendant, conducted cross-examination of Barral at the earlier trials, *Suarez* himself has had no opportunity to develop the testimony on cross. That his lawyer did so on behalf of another

individual does not approach satisfaction of Rule 804(b)(1). Nor did Barral testify against his pecuniary interests. Government prosecutors informed him that if he testified consistently with his statements to F.B.I. agents, he would not be prosecuted. He made his statements to the F.B.I. in a self-serving effort to avoid prosecution—in his words, "the only way I could clear myself from the prosecution, and so I did." Gov't Ex. 1, p. 2934. Barral's state of mind at the time he made the statements is what matters, and clearly he spoke at all times in order to avoid prosecution.

What remains is subsection 804(b)(5), which contains a catch-all provision designed to ensure the admission of inherently trustworthy hearsay statements, not covered by another exception. For the section to apply, the Court must determine that the hearsay statement has "equivalent circumstantial guarantees of trustworthiness," that it is offered to prove a material fact and is more probative of that fact than other evidence, and finally that the general purposes of the rules and the interests of justice will be served by admission.

The Court believes that the requirements of the Rule have been met by Barral's trial testimony. "Equivalent circumstantial guarantees of trustworthiness." are evident from the facts surrounding the giving of the testimony. *See* discussion *infra* pp. 443–44. That defendant received a blasting cap from Barral near the date of the crime is clearly material. No other evidence is available to establish the point. The interests of justice, and the purposes of the rules will be served precisely because the evidence, though hearsay, is otherwise reliable.

 This does not end the inquiry, however. Admission of Barral's testimony must also meet the requirements of the Confrontation Clause. The clause does not automatically prevent the admission of hearsay statements against a criminal defendant, as the Supreme Court has deter-

---

**4.** "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

mined that it should not be applied literally. Rather,

> when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissable only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2536, 65 L.Ed.2d 597 (1980).

Rule 804(b)(5) is far from firmly rooted. To show the "particularized guarantees of trustworthiness" necessary to justify admission of prior testimony, the government relies extensively upon a recent decision of the First Circuit, *United States v. Zannino*, 895 F.2d 1 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). In *Zannino*, the court was faced with the similar problem of a deceased grand jury witness who also had testified at an earlier trial. It upheld admission of the testimony, finding that it "contained ample trappings of dependability." *Id.* at 6. The factors the court relied upon included that the testimony was given under oath, was not implausible and "was solidly corroborated." Further, the court noted that the witness had testified about matters within his personal knowledge, appeared without immunity and no substantial extrinsic evidence impeached his story. *Id.*

Defendant's attack on the applicability of *Zannino* begins and ends with the corroboration factor. He concedes that the courts routinely admit prior uncrossexamined grand jury testimony.[5] He insists, however, that "the critical factor is the extent to which Barral's statements are corroborated by other evidence in the case." Def. Resp. to Gov't Mot. re: Deceased Witness, at 7. Defendant proceeds to attempt to show inconsistencies between Barral's and Townley's testimony. Counsel on both sides apparently were unaware that subsequent to briefing, but prior to oral argument, the Supreme Court's decided *Idaho v. Wright*, —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

In *Wright*, Justice O'Connor writing for the majority firmly and categorically rejected the use of corroborating evidence in conducting the "particularized guarantees of trustworthiness" analysis. Instead, the inquiry must focus upon the circumstances surrounding the making of the statement, and nothing more:

> [W]e are unpersuaded by the State's contention that evidence corroborating the truth of a hearsay statement may properly support a finding that the statement bears "particularized guarantees of trustworthiness." To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial.

*Id.* 110 S.Ct. at 3150.[6]

The Court is left, therefore, to analyze solely the circumstances surrounding Barral's trial testimony itself.[7] All but one of

---

5. *See, e.g., United States v. Guinan*, 836 F.2d 350, 358 (7th Cir.), *cert. denied,* 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 907 (1988); *United States v. Marchini*, 797 F.2d 759, 764–65 (9th Cir.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1288, 94 L.Ed.2d 145 (1987); *United States v. Walker*, 696 F.2d 277, 280–81 (4th Cir.1982), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983).

6. Justice O'Connor elaborated on the logic of the Court's holding:
 In short, the use of corroborating evidence . . . would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial,

a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility.
*Wright*, 110 S.Ct. at 3150.

7. Clearly, the most promising set of circumstances for the government in demonstrating reliability can be found in Barral's trial testimony. His statements to the F.B.I. were unsworn and obviously not subject to cross-examination. The grand jury testimony also had no cross-examination to bolster reliability.

the factors indicating reliability in *Zannino* are met with respect to Barral. Barral gave testimony under oath, subject to prosecution for perjury. It was not implausible on its face. Barral testified about matters within his personal knowledge. In addition, Barral testified consistently at two trials years apart, and under extensive cross-examination. Each of these factors weighs strongly in favor of the testimony's reliability and therefore, admissibility at defendant's trial.

What is lacking here, but present in *Zannino*, is testimony without a grant of immunity. As the Court noted above, Barral testified under an informal understanding with the government that he would not be prosecuted. In *Zannino*, the witness had no such protection. In noting the absence of immunity, the court in *Zannino* cited *United States v. Guinan*, 836 F.2d 350 (7th Cir.), *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 907 (1988). The Seventh Circuit in *Guinan* discussed the absence of immunity for the witness in its recitation of the facts, but its analysis under the Confrontation Clause at the page cited in *Zannino* is devoid of any reference to immunity. In any event, the absence of immunity should play a larger role in assessing immunity in the case of uncrossexamined grand jury testimony, as the court was considering in both *Guinan* and *Zannino*. Clearly, the reliability of testimony is significantly enhanced where cross-examined—in this Court's view, enough so to overcome any doubts due to the presence of informal immunity.

At bottom, then, the Court holds that Barral's testimony at the two previous trials qualifies as an exception to the hearsay rule under Rule 805(b)(5) and bears sufficient "indicia of reliability" to meet the requirements imposed by the Confrontation Clause. The government's motion for its admission into evidence will be granted.

An appropriate Order accompanies this Memorandum.

## ORDER

Upon consideration of Defendant's Motion for Discovery and a Bill of Particulars, Motion for Additional Peremptory Challenges, Motion *In Limine* Regarding 404(b) Evidence and Motion for an Order Granting the Right to Depose Certain Chilean Witnesses in Chile and for the Court to Issue a Request for the Assistance of the Judiciary of Chile in Performing Certain Judicial Acts, and the Government's opposition thereto;

And upon consideration of the Government's Motion *In Limine* to Preliminarily Exclude the Introduction of Evidence or Questioning Relating to the Acquittals of G. Novo and A. Ross, Motion *In Limine* to Preliminarily Exclude the Introduction of Evidence or Questions Relating to a Telephone Call Between Michael Townley and Gustavo Etchepare, and Motion for Admission of Statements and Testimony of Deceased Witness, and Defendant's opposition thereto;

And in accordance with the Memorandum entered this date, it by the Court this 5th day of September, 1990,

ORDERED, that Defendants' Motion for Discovery and a Bill of Particulars, Motion for Additional Peremptory Challenges and Motion for an Order Granting the Right to Depose Certain Chilean Witnesses in Chile and for the Court to Issue a Request for the Assistance of the Judiciary of Chile in Performing Certain Judicial Acts be and hereby are DENIED; and it is

FURTHER ORDERED, that Defendant's Motion *In Limine* Regarding 404(b) Evidence be and hereby is DENIED, in that the Government shall be permitted to introduce in its case-in-chief the evidence described in its proffer relating to defendant's relationship with alleged co-conspirator Michael Townley, Townley's dealings with DINA (Chilean Intelligence) and the Cuban Nationalist Movement, as well as the previous use of materials and equipment by that group in attempting to carry out an assassination plan in Mexico similar to the homicide charged in this case; and it is

FURTHER ORDERED, that the Government's Motion *In Limine* to Preliminarily Exclude the Introduction of Evidence or

Questioning Relating to the Acquittals of G. Novo and A. Ross be and hereby is DENIED, in that Defendant shall be permitted to offer evidence of his knowledge thereof to counter the Government's proof regarding Defendant's flight; and it is

FURTHER ORDERED, that the Government's Motion *In Limine* to Preliminarily Exclude the Introduction of Evidence or Questions Relating to a Telephone Call Between Michael Townley and Gustavo Etchepare be and hereby is DENIED in part, in that Defendant shall be permitted to inquire of Townley, relevant to his credibility as a witness, regarding the existence and substance of the conversation, save those areas excluded in the Court's Memorandum, and the Motion is hereby GRANTED in part, in that the recording of the conversation or a transcript thereof shall not be received into evidence; and it is

FURTHER ORDERED, that the Government's Motion for Admission of Statements and Testimony of Deceased Witness be and hereby is GRANTED, in that transcripts of Jose Barral's testimony in the previous trials in this matter shall be read and received into evidence.

### ORDER

Upon consideration of the Government's motion in limine for presumptive authentication of a foreign public document, that is a marriage certificate control number 00747 from the Mexican State of Hidalgo, it is this 5th day of September, 1990,

ORDERED, that the motion be GRANTED.