UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert J. SNYDER,
Defendant–Appellant.

No. 88–1091.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1988.

Decided April 28, 1989.

Stephen G. Kehoe, Nisen & Elliott, Chicago, Ill., for defendant-appellant.

Laura Jones, Asst. U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Defendant-appellant Robert Snyder appeals his conviction on four counts of a forty count indictment charging him with violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1952(a), 1961, 1962(d), and 1963, and the Controlled Substances Act, 21 U.S.C. § 841(a)(1). The indictment was returned on November 13, 1980, and alleges in Count 1 that Snyder and several other named defendants conspired and formed a drug-smuggling enterprise known as "the Company"; that Snyder was in charge of internal security for the Company; that he conducted polygraph examinations to detect disloyalty within the Company; that he intimidated prospective witnesses; and, that he issued two "contracts" to murder "business associates" of the Company. The indictment specifically alleges that in early 1977, in the Eastern District of Kentucky, Snyder paid Larry Barton $10,000 to murder a person known as "Big Red" of the East St. Louis, Illinois area; and that on or about July of 1978, in the Northern District of Georgia, Snyder paid Barton $15,000 to murder William Wade Hampton. Snyder was also charged and convicted under Counts 3 and 4 of the indictment with interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952(2); and in Count 29 with possession of marijuana with

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

intent to distribute in violation of 21 U.S.C. § 841(a)(1).

In June 1979, the government called Larry Barton to testify before a grand jury regarding his affiliation with Snyder and the Company. At the time, Barton was serving two concurrent life sentences for solicitation to commit the murder of William Hampton. In return for his testimony, the government agreed to arrange Barton's transfer to a federal penitentiary. During the course of his testimony before the grand jury, Barton stated that he first met Snyder in 1975 in St. Petersburg, Florida where Snyder was the polygraph examiner for a pornography organization; that in March or April of 1976, Snyder hired him to "shotgun"[1] $250,000 to Miami; that Snyder gave him $10,000 to murder an East St. Louis, Illinois man known as "Big Red" who had been "ripping off the Company"; that Snyder asked him to acquire automatic weapons for the Company; and that Snyder paid him $15,000 in July 1978 to murder William Hampton. Barton also testified that between 1976 and the middle part of 1977 Snyder made at least six trips to South America carrying large sums of money, and that the Company and Snyder had become involved in "coke" and "the hard stuff" as well as marijuana.

Authorities were unable to locate Snyder for a period of six years following his indictment. Finally, in November 1986, Snyder turned himself in, and he was tried a year later. Unfortunately for the government, Barton died in prison on April 19, 1987, seven months before trial. Barton's testimony was the only direct evidence the government had at the time linking Snyder to the two overt acts charged in Count 1 of the indictment (the contracts on "Big Red" and William "Wade" Hampton), and was vital to the government's case against Snyder. Having no alternative, the government sought to introduce the transcript of Barton's grand jury testimony at trial.

The record discloses that defense counsel's only objection to the admission of the transcript was that it did not fit within one of the exceptions for out-of-court statements or for hearsay under Fed.R.Evid. 804(b). Counsel maintained that Barton's testimony was not against penal interest where he was already serving two concurrent life sentences. He further argued that there were insufficient guaranties of trustworthiness to warrant admission under Rule 804(b)(5) where the testimony was uncorroborated and not subject to cross-examination.

The district court made a preliminary finding that Barton's grand jury testimony was admissible under Fed.R.Evid. 804(b)(5) as the testimony was given under oath before a grand jury, was more probative than any other evidence, and best served the general purposes of the rules of evidence and the interest of justice. The district court thereafter afforded counsel the opportunity to object to specific portions of the transcript. That invitation was rejected by counsel, stating "that if any part of it is allowed in, then I think it succeeds in bringing it all in, and I would not want to have it cut up...."

The government also introduced, without objection, evidence from co-conspirators, William Hampton, Richard Larson, Richard Thorp, and from two other witnesses concerning Snyder's involvement, either before or after his affiliation with the Company, in other illegal drug-smuggling operations and in a pornography organization.

When Snyder took the stand in his own defense, he testified that his involvement with the Company was at the direction of a now deceased federal drug enforcement agent named Harold Brown, as a government informant. While he denounced Barton as a "criminal" and a liar, he acknowledged that Richard Thorp had asked him to hire someone to murder William Hampton; that Thorp had given him $20,000 for the job; and, that he paid Barton $15,000 to murder Hampton. Snyder, however, stated that he told Barton to wait until he received further word before taking any ac-

---

1. Historically, a "shotgun messenger" referred to an armed guard on a stagecoach. Webster's Third New International Dictionary 2104 (1981). Barton served in a similar capacity for Snyder.

tion, and that he never gave that final word. Snyder denied any knowledge of the "Big Red" contract.

At the conclusion of the evidence, a guilty verdict was returned against Snyder on Counts 1, 3, 4 and 29. He was acquitted on all remaining Counts.

Snyder challenges his conviction on the following grounds: (1) the district court erred in admitting Barton's grand jury testimony; (2) the district court erred in admitting evidence of other crimes, wrongs or acts under Fed.R.Evid. 404(b) without *sua sponte* undertaking an analysis under *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) and *United States v. Shackleford*, 738 F.2d 776 (7th Cir.1984); and, (3) he was deprived of his Sixth Amendment right to effective assistance of counsel, by counsel's continued failure to object to prejudicial evidence.

## BARTON'S GRAND JURY TESTIMONY

Snyder challenges the admission of Barton's grand jury testimony under both Fed. R.Evid. 804(b)(5) and the Confrontation Clause of the Sixth Amendment. While we review the district court's ruling under Rule 804(b)(5) for an abuse of discretion, *United States v. Fuesting*, 845 F.2d 664, 673 (7th Cir.1988), our review of the constitutional issue is limited by the strict standards of the plain error doctrine, as this issue was apparently raised for the first time on appeal. *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir.1988); *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985).[2]

The parties do not dispute that under appropriate circumstances, the grand jury testimony of an unavailable witness may be admitted at trial as substantive evidence of a defendant's guilt without violating the Federal Rules of Evidence or the Confrontation Clause of the Sixth Amendment. See, i.e., *United States v. Guinan*, 836 F.2d 350, 353–58 (7th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 2871, 101 L.Ed.2d 907 (1988); *United States v. Marchini*, 797 F.2d 759, 762–65 (9th Cir.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1288, 94 L.Ed.2d 145 (1987); *United States v. Barlow*, 693 F.2d 954, 960–65 (6th Cir.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983); *United States v. Boulahanis*, 677 F.2d 586, 588–89 (7th Cir.), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982); *United States v. Garner*, 574 F.2d 1141, 1143–46 (4th Cir.), *cert. denied sub nom. McKethan v. United States*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978); *United States v. West*, 574 F.2d 1131, 1134–38 (4th Cir.1978).

In this circuit, such testimony is admissible, if at all, only under the stringent standards of Fed.R.Evid. 804(b)(5), the catch-all hearsay exception. *Boulahanis*, 677 F.2d at 588. To be admissible under Rule 804(b)(5), the statement must contain "circumstantial guarantees of trustworthiness" equivalent to those inherent in the more specific exceptions provided under Rule 804(b)(1)–(4).[3] To overcome the obstacles of a Sixth Amendment challenge, the statement must also contain "adequate 'indicia of reliability.'" *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65

---

**2.** In *Silverstein* we held that:

> To be plain, an error must be conspicuous, at least in hindsight ...; but it must also be an error that probably changed the outcome of the trial, and the fact that [an] error cannot be dismissed as harmless ... is not enough to show that it probably changed the outcome. No doubt the difference between the standards of plain and of harmless error is small, but there is some, and there is a reason for it. Reversing a conviction on the basis of an error that the defendant's lawyer failed to bring to the judge's attention is inconsistent with the premises of an adversary system and disruptive of the efficient operation of the criminal justice system. It is justifiable only

when the reviewing court is convinced that it is necessary in order to avert an actual miscarriage of justice, which implies the conviction of one who but for the error probably would have been acquitted.

732 F.2d at 1349 (citations omitted).

**3.** Under Rule 804(b)(5), the statement must also (A) be offered as evidence of a material fact; (B) be more probative than any other evidence on point which the proponent can procure through reasonable efforts; and (C) serve the general purposes of the rules of evidence and the interests of justice. Fed.R.Evid. 804(b)(5)(A)–(C).

L.Ed.2d 597 (1980); see also *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 219–20, 27 L.Ed.2d 213 (1970); *California v. Green*, 399 U.S. 149, 161, 90 S.Ct. 1930, 1936–37, 26 L.Ed.2d 489 (1970). The standards are similar, yet distinct, see *Guinan*, 836 F.2d at 358; *Marchini*, 797 F.2d at 764; *United States v. Feldman*, 761 F.2d 380, 387 (7th Cir.1985); *Barlow*, 693 F.2d at 964, and reliability may not be inferred under a Sixth Amendment analysis merely because the prior testimony is admissible under Rule 804(b)(5). *Marchini*, 797 F.2d at 764; *Barlow*, 693 F.2d at 964; *West*, 574 F.2d at 1137 and n. 7. The proponent of the evidence, however, can overcome a Sixth Amendment challenge if it can show that the testimony was given under circumstances which "indicate that its content is probably true," *Boulahanis*, 677 F.2d at 589; *West*, 574 F.2d at 1137, and which provide the jury with a sufficient basis for judging its truthfulness. *Roberts*, 448 U.S. at 65–66, 100 S.Ct. at 2539; *Mancussi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972); *Dutton*, 400 U.S. at 89, 91 S.Ct. at 219–20; *Green*, 399 U.S. at 161, 90 S.Ct. at 1936–37; *United States ex rel. Haywood v. Wolff*, 658 F.2d 455, 460 (7th Cir.), *cert. denied*, 454 U.S. 1088, 102 S.Ct. 649, 70 L.Ed.2d 625 (1981). See also *Feldman*, 761 F.2d at 387 ("[S]tatements are [constitutionally] admissible even where there was no cross-examination if it is clear (1) that the declarant actually made the statement in question; and (2) there is circumstantial evidence supporting its veracity.").

At trial, Snyder challenged the admission of Barton's grand jury testimony solely on evidentiary grounds. The district court found that Barton's testimony contained the necessary circumstantial guarantees of trustworthiness under Rule 804(b)(5) because it was given under oath, before a grand jury and was more probative than any other evidence. We cannot agree.

The need for Barton's testimony is undisputed. There were no other known witnesses to the transactions between Barton and Snyder and there was nothing the government could do to produce Barton.

Assuming the materiality and probativeness of Barton's testimony, Fed.R.Evid. 804(b)(5)(A)–(B), there remains a serious question as to the trustworthiness of that testimony. To the extent the district court relied solely on the nature of the grand jury proceeding to supply the necessary circumstantial guarantees of trustworthiness, we find the admission of Barton's testimony to be an abuse of discretion.

"[T]hat evidence was given before a grand jury adds little to its reliability." *Garner v. United States*, 439 U.S. 936, 938, 99 S.Ct. 333, 335, 58 L.Ed.2d 333 (1978) (J. Stewart and J. Marshall, dissenting from denial of certification). See also *United States v. Gonzalez*, 559 F.2d 1271, 1273 (5th Cir.1977); *United States v. Vigoa*, 656 F.Supp. 1499, 1506–07 (D.N.J.1987), *aff'd*, 857 F.2d 1467 (3d Cir.1988). Neither Snyder, nor anyone on his behalf, was present during the grand jury proceedings, no cross-examination of any kind was permitted, and the ordinary rules of evidence did not apply, allowing the government to ask questions which were often leading and suggestive. Neither do we find the fact that Barton's testimony was under oath and subject to a penalty for perjury to markedly enhance the reliability of his testimony. Barton was serving two concurrent life sentences at the time he gave his testimony. The threat of any additional sanction would not necessarily deter him from misrepresenting or embellishing the facts.

The issue therefore becomes whether the admission of Barton's grand jury testimony —although error at the time—constitutes reversible error. We find that, when viewed in its entirety, the record adequately, if retrospectively, supports the admission of Barton's testimony, and accordingly find any error in its original admission to be harmless.

In assessing the reliability of Barton's grand jury testimony under Rule 804(b)(5) and the Confrontation Clause, the district court should have considered such factors as: the character of the witness for truthfulness and honesty, and the availability of evidence on the issue; whether the

testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness' relationship with both the defendant and the government and his motivation to testify before the grand jury; the extent to which the witness' testimony reflects his personal knowledge; whether the witness ever recanted his testimony; the existence of corroborating evidence; and, the reasons for the witness' unavailability. *See Guinan,* 836 F.2d at 355–58; *Feldman,* 761 F.2d at 387; *Marchini,* 797 F.2d at 763–65; *Barlow,* 693 F.2d at 962–63; *Boulahanis,* 677 F.2d at 588–89; *Haywood,* 658 F.2d at 462–63; *West,* 574 F.2d at 1135–38; *Gonzalez,* 559 F.2d at 1273–74; *United States v. Vigoa,* 656 F.Supp. 1499, 1512 (D.N.J.1987), *aff'd,* 857 F.2d 1467 (3d Cir.1988). We would note that these factors are neither exhaustive nor absolute. *United States v. York,* 852 F.2d 221, 225 (7th Cir.1988); *Guinan,* 836 F.2d at 355. "Every case must be analyzed on its own facts." *Guinan,* 836 F.2d at 355.

▮ In reviewing the record, we find that although Barton's testimony was not subject to any form of cross-examination, it was given voluntarily. While Barton had a criminal record which might have suggested a lack of credibility, the jury was apprised of that record before Barton's testimony was read into evidence. His statements were of past fact, within his personal knowledge; and while the government's questions during the grand jury proceeding were often leading, Barton's responses were specific and detailed. Whether Barton had sufficient motive to fabricate or embellish the facts to which he testified is questionable. The government did agree to assist Barton in transferring from a state prison to a federal prison, a move which many consider favorable. Testimony obtained through "currying favor with the law enforcement officials" may indeed be self-serving and potentially unreliable. *Feldman,* 761 F.2d at 387. The jury, however, was apprised of the agreement between Barton and the government in accordance with *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). See *Feldman,* 761 F.2d at 388.

We would also note that Barton's unavailability could in no way be attributed to the government, but was rather the result of Snyder's own flight from justice. There is, however, a conspicuous absence of two key factors at the time Barton's testimony was admitted, namely cross-examination and corroboration.

The absence of cross-examination alone is not determinative. See *Dutton,* 400 U.S. at 88–89, 91 S.Ct. at 219; *Feldman,* 761 F.2d at 387. "The Supreme Court has never intimated that cross-examination is the only means by which prior recorded testimony may be qualified for admission under the Confrontation Clause." *West,* 574 F.2d at 1137. Case law, however, appears to indicate that where there is no opportunity for cross-examination, we should demand physical evidence or the testimony of other witnesses confirming the details of the hearsay statement. See *Guinan,* 836 F.2d at 356–58; *Marchini,* 797 F.2d at 763–65; *Barlow,* 693 F.2d at 962–63; *Boulahanis,* 677 F.2d at 588–89. As we noted in *United States ex rel. Haywood v. Wolff,* "... a deceased witness' grand jury testimony may be admissible, even though totally untested by cross-examination, if it is sufficiently corroborated by other evidence to assure the minimal reliability required." *Haywood,* 658 F.2d at 462–63. There was little if any such evidence in the record at the time Barton's grand jury testimony was admitted.

Snyder, however, subsequently took the stand in his own defense and corroborated Barton's testimony with respect to one of the two murder-for-hire contracts. While Snyder did not confirm every detail of Barton's testimony, he conceded enough to make the whole adequately trustworthy. See, i.e., *Guinan,* 836 F.2d at 356–58 (under the circumstances there was no need to independently corroborate every detail of the hearsay statement.)

▮ That Snyder may have elected not to take the stand in his own defense had Barton's testimony been excluded does not dissuade us from finding the error to be harmless. We analogize this situation to

one in which the prosecutor fails to present, in his case-in-chief, enough evidence to support a conviction, but the judge erroneously denies a motion for acquittal and the defendant thereafter provides the missing link which leads to his ultimate conviction. On appeal, our review of the evidence is not limited to the evidence which had been presented prior to the erroneous ruling, rather we review the sufficiency of the evidence in its entirety, without regard to when or by whom it was introduced. *United States v. Fearn*, 589 F.2d 1316, 1321 (7th Cir.1978). See also *McGautha v. California*, 402 U.S. 183, 215–16, 91 S.Ct. 1454, 1471–72, 28 L.Ed.2d 711 (1971); *United States v. Calderon*, 348 U.S. 160, 164 and n. 1, 75 S.Ct. 186, 188 and n. 1, 99 L.Ed. 202 (1954). As the court ruled in *United States v. Foster*, 783 F.2d 1082 (D.C.Cir.1986) (en banc),

> [the] policy judgment [behind this rule] is that a defendant demonstrated to be guilty beyond a reasonable doubt on the basis of all the valid and admissible evidence will not be set free merely because, had an earlier erroneous ruling been made correctly, the trial would have ended before sufficient evidence to convict had been introduced. That balance between the procedural rights of the defendant and protection of society might have been struck differently; but the fact is that it has not been.

*Foster*, 783 F.2d at 1084–85. Similarly, we see no need to set aside the verdict when the admission of evidence was error at the time, but facts produced by the defendant establish the foundation for that evidence. That the most essential indicia of reliability was supplied by the defendant after an erroneous evidentiary ruling by the district court is irrelevant, where, as here, our review of the entire record satisfies us that the hearsay was indeed sufficiently reliable. See *Feldman*, 761 F.2d at 387.

### OTHER CRIMES EVIDENCE

■ Snyder's objection to the government's Rule 404(b) evidence linking Snyder with illegal activities other than those charged in the indictment was raised for the first time on appeal. Our review is thus limited by the strict standards of the plain error doctrine of Fed.R.Crim.P. 52(a). *Wynn*, 845 F.2d at 1442; *Silverstein*, 732 F.2d at 1349. To establish plain error, Snyder must show that but for the erroneously admitted evidence, he probably would have been acquitted. *Wynn*, 845 F.2d at 1443; *United States v. Whaley*, 830 F.2d 1469, 1476 (7th Cir.1987). We find that he has failed to meet that burden.

Federal Rule of Evidence 404(b) provides:

> (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The other crimes evidence elicited from Barton and other government witnesses could arguably have been used to demonstrate Snyder's opportunity, intent, preparation, plan and knowledge to commit the charged offenses. See *United States v. Percy*, 765 F.2d 1199 (4th Cir.1985) (evidence of previous involvement in drug smuggling operations admissible to prove intent). "That the other bad acts came after the crimes charged in the indictment does not preclude their use to show intent." *United States v. Beasley*, 809 F.2d 1273, 1278 (7th Cir.1987); *United States v. Moschiano*, 695 F.2d 236, 245 (7th Cir.1982), *cert. denied*, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983); *United States v. Peskin*, 527 F.2d 71, 84 (7th Cir.1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed. 2d 79 (1976).

Even if we were to assume error in the admission of the government's other crimes evidence, Snyder must still demonstrate that the error was conspicuous, and that it probably changed the outcome of the trial. *Silverstein*, 732 F.2d at 1349. We conclude after reviewing the record in its entirety, that any error in admitting the other crimes evidence in Snyder's case was neither conspicuous, nor did it work a miscarriage of justice.

## INEFFECTIVE ASSISTANCE
## OF COUNSEL

■ To prevail on his claim of ineffective assistance of counsel, Snyder must show that his trial counsel's performance fell below an objective standard of reasonableness, and that counsel's deficiencies prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 688–92, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d 674 (1984). We begin with a strong presumption that counsel rendered reasonably effective assistance, and consider counsel's effectiveness under the totality of the circumstances. *United States v. Zylstra,* 713 F.2d 1332, 1338 (7th Cir.), *cert. denied,* 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983). To overcome that presumption, Snyder must identify "acts or omissions [of course] which were outside the range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. To satisfy the prejudice component of *Strickland,* Snyder "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 695, 104 S.Ct. at 2068–69.

In an attempt to rebut the presumption of reasonably effective assistance, Snyder specifically points to counsel's failure to:

(1) make any pretrial requests to discover the uncharged misconduct evidence, or to make any motions *in limine* to exclude such evidence;

(2) make any specific objections to the introduction of Rule 404(b) evidence;

(3) make any timely or effective objection to the prosecution's attempt to impeach the defendant;

(4) object to leading questions by the government or effectively cross-examine witnesses;

(5) request limiting or curative instructions concerning the Rule 404(b) evidence and Barton's testimony.

Snyder concludes in summary fashion that there is a reasonable probability that these errors affected the outcome of the trial. We do not agree.

While a general policy of *never* objecting to improper questions may constitute ineffective assistance, *United States v. Wolf,* 787 F.2d 1094, 1099 (7th Cir.1986), so too there are legitimate grounds for failing to object to such questions. Counsel may believe "either that the witness will give an answer helpful to the defense (or at least not harmful to it) or that too-frequent objecting will irritate the jury or make it think the defendant is trying to hide the truth." *Id.* The timing of counsel's objections in the present case could reasonably be viewed as a matter of trial tactic or strategy. We give a high degree of deference to counsel in making such choices. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. In the present case, objections were raised and counsel did make a timely and proper motion to suppress the evidence most critical to the government's case, Barton's grand jury testimony. Counsel's failure to object to other Rule 404(b) evidence is insignificant where, as we have already noted, it is unlikely that the objection would have been sustained. While counsel may not have requested limiting instructions, such instructions were, in fact, given. Neither do we find the adequacy of counsel's cross-examination to support Snyder's claim of ineffective assistance.

In light of all circumstances, we do not find trial counsel's conduct to be outside the range of professionally competent assistance.

## CONCLUSION

Having found:

(1) that any error in the admission of Barton's grand jury testimony was harmless under the circumstances;

(2) that admission of other bad acts evidence under Fed.R.Evid. 404(b), did not constitute plain error; and,

(3) that trial counsel's performance did not constitute ineffective assistance under the Sixth Amendment,

we now AFFIRM Snyder's conviction.