UNITED STATES of America,
Plaintiff–Appellant,

v.

Michael MOKOL, Defendant–Appellee.

No. 90–1777.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1990.
Decided Aug. 6, 1991.

Michael A. Thill, Asst. U.S. Atty. (argued), Dyer, Ind., for plaintiff-appellant.

Martin H. Kinney, William L. Touchette (argued), Merrillville, Ind., for defendant-appellee.

Before COFFEY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

In this interlocutory appeal, the government seeks to overturn a pretrial ruling by the district court that certain prior testimony of a murdered government witness is not admissible in this related trial. We defer to the judgment of the district court and affirm the decision to deny admission of the testimony.

## I.

A federal grand jury indicted Michael Mokol, the former chief of police of the Lake County (Indiana) Police Department, on one count of perjury in violation of 18 U.S.C. § 1623 and two counts for obstruction of justice in violation of 18 U.S.C. § 1503. The charges alleged that Mokol altered a police department report, provided false testimony regarding the alteration, and caused the report to be admitted into evidence in an earlier federal trial of his boss, the former sheriff of Lake County, Rudy Bartolomei.

### A. The Bartolomei Facts and Proceeding

Special agents of the Bureau of Alcohol, Tobacco and Firearms had reason to believe that Sheriff Bartolomei was keeping stolen weapons at the Lake County government complex. The agents met with Officer Gary Rosser, a patrolman for the Lake County Police Department, told him of their suspicions and sought permission from him to view the weapons. On April 23, 1984, Officer Rosser granted the agents permission and they entered the armory in the sheriff's department where the weapons were located. He also agreed to meet the agents again on April 25th. On the 25th, the agents served Rosser with a search warrant. Pursuant to the search warrant, the agents seized a number of handguns, shotguns, rifles and a silencer for a pistol from a steel safe in the armory.

After learning of the execution of the search warrant and Officer Rosser's involvement, Chief Mokol told Officer Rosser to prepare a report describing the events of the 25th. Rosser prepared a report and gave it to Chief Mokol. However, in the report he did not relate any information concerning his prior meeting with the agents and, as was later revealed, he misrepresented the course of events of April 25th.

Prior to Sheriff Bartolomei's 1985 trial on a weapons charge, his attorney, Max Cohen, filed a motion to suppress the evidence seized pursuant to the search; a hearing was held to resolve the suppression issue. At the suppression hearing, Officer Rosser was questioned about his knowledge of the circumstances surrounding the search of the armory in the sheriff's department and the evidence seized. During Officer Rosser's testimony, Mr. Cohen attempted to impeach Rosser's credibility by using the typewritten report that Rosser had produced for Chief Mokol. Officer Rosser acknowledged that a number of statements in the report were false. He also testified that the typewritten report contained some statements that he had not made and that these must have been added to his report after he submitted it to Chief Mokol. Officer Rosser testified that he did not type the last line on page 2 which read, "Mokol was also present, he stated the guns could be used for training." He also stated that he was not certain, but he did not think that he typed the last line on page 3. That line on page 3 read, "Also M. Mokol and F. Hughes seen the guns when they picked up the shotguns."

The presence of Chief Mokol at the safe and his comment together with Mokol's

awareness of what was inside the safe arguably could have provided the basis for an alibi for Bartolomei in his trial on weapon charges.

### B. The Mokol Proceeding

The charges against Chief Mokol arose from the government's belief that Mokol altered Rosser's report. Chief Mokol was indicted on November 17, 1989; Officer Rosser was murdered on or about January 13, 1990.[1] Because Rosser obviously was unavailable to testify, the government moved to admit his testimony from the Bartolomei suppression hearing under the catch-all hearsay exception, Federal Rule of Evidence 804(b)(5). At a pretrial hearing to determine admissibility, the district judge stated that corroboration of the testimony would be required before he would consider admitting Rosser's prior testimony. He also added that even if the statements of Rosser were corroborated, he would consider admitting them only after weighing all relevant factors including Rosser's credibility.

At a subsequent hearing, the government called Max Cohen as a witness to corroborate Rosser's testimony that the report had been altered. Mr. Cohen could only testify that he had the "impression," after examining Rosser in the Bartolomei trial, that the report had been altered. He also said that after he examined Rosser he confronted Sheriff Bartolomei and Chief Mokol but could not recall their responses to his question, "What do you dumb asses think you're doing?" The government also had offered to produce a forensics expert who would testify that the report was removed from the typewriter and placed back into it before the last line was typed on page 2 and on page 3.

The district court denied the government's request to admit those portions of Officer Rosser's testimony which concerned the alteration of the report he had prepared, on the grounds that the government had "failed to adequately corrob-

orate" this aspect of Rosser's testimony, and that admission of the testimony would thereby violate the confrontation clause of the sixth amendment.

## II.

■ Trial judges have broad discretion when making evidentiary rulings and thus we afford their decisions in this area special deference. *United States v. Hooks*, 848 F.2d 785, 793 (7th Cir.1988). Specifically applicable in this case, the district judge is accorded "considerable discretion, within the parameters of the Rules of Evidence, in determining whether ... hearsay statements contain the necessary circumstantial guarantees of trustworthiness." *United States v. Guinan*, 836 F.2d 350, 354 (7th Cir.) (quoting *United States v. Vretta*, 790 F.2d 651, 659 (7th Cir.), *cert. denied*, 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986)), *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 907 (1988); *Hooks*, 848 F.2d at 796. Thus we may not substitute our judgment for that of the trial judge, nor may we reverse an evidentiary ruling unless it is shown that the trial court abused its discretion. *Hooks*, 848 F.2d at 793; *United States v. Snyder*, 872 F.2d 1351, 1354 (7th Cir.1989). As we have said before, the issue before us is not whether we would have admitted the challenged evidence, but whether there was a principled basis for its admission. *United States v. York*, 933 F.2d 1343, 1348 (7th Cir.1991).

■ The confrontation clause of the sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The clause is not interpreted literally; such an interpretation would bar the admission of any statements made by a declarant not present at trial, some of which are admissible as exceptions to the rule against hearsay. *Ohio v. Roberts*, 448 U.S. 56, 63–64, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). Testimony of

---

1. On January 22, 1990, Magistrate Andrew P. Rodovich entered an order revoking Mokol's bond and detaining him pending trial as he found "there is probable cause to believe that Mr. Mokol was involved in the deaths of the Rossers [Rosser's wife also was murdered] in violation of the terms and conditions of his release."

an unavailable witness can be admitted only under the stringent standards of Rule 804(b)(5), the catch-all hearsay exception.[2] *Snyder,* 872 F.2d at 1354 (citing *United States v. Boulahanis,* 677 F.2d 586, 588 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982)). But evidence that is admissible under this exception may still violate the sixth amendment. *United States v. Doerr,* 886 F.2d 944, 957 (7th Cir.1989). As the Supreme Court has said, although the hearsay rules and the confrontation clause "stem from the same root ... the two are not equivalent." *Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970). So while the standards under Rule 804(b)(5) and the confrontation clause are similar, they remain distinct, and "reliability may not be inferred under a Sixth Amendment analysis merely because the prior testimony is admissible under Rule 804(b)(5)." *Snyder,* 872 F.2d at 1355 (citations omitted). Thus Rule 804(b)(5) requires that the statement contain "circumstantial guarantees of trustworthiness;" and to avoid violating the sixth amendment the statement must also contain adequate "indicia of reliability." *Id.* (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539); *United States ex rel. Haywood v. Wolff,* 658 F.2d 455, 463 (7th Cir.), *cert. denied,* 454 U.S. 1088, 102 S.Ct. 649, 70 L.Ed.2d 625 (1981).

### III.

■ The government argues that the district court abused its discretion because it "focused almost exclusively on corroboration" and performed a "cursory and incomplete analysis" of the factors that should have been considered in a determination of whether testimony of an unavailable witness is admissible under Rule 804(b)(5) or the confrontation clause. We have said that

[i]n assessing the reliability of [the unavailable witness'] testimony under Rule 804(b)(5) and the Confrontation Clause, the district court should [consider] such factors as: the character of the witness for truthfulness and honesty and the availability of evidence on the issues; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness' relationship with both the defendant and government and his motivation to testify [ ]; the extent to which the witness' testimony reflects his personal knowledge; whether the witness ever recanted his testimony; the existence of corroborating evidence; and, the reasons for the witness' unavailability. *We would note that these factors are neither exhaustive nor absolute. Every case must be analyzed on its own facts.*

*Snyder,* 872 F.2d at 1355–56 (citations omitted) (emphasis added). The factors we cite from *Snyder* (the government recites the same list of factors in their brief) are intended to provide guidance for the trial judge. They are neither "exhaustive nor absolute," and determination of the trustworthiness of testimony of an unavailable witness must be analyzed on the facts of each case. *See Doerr,* 886 F.2d at 956; *Snyder,* 872 F.2d at 1355–56; *Hooks,* 848 F.2d at 797.

At this point we note the salient fact that District Judge James T. Moody who presided in the case now before us also presided in the proceedings in which Officer Rosser testified. This aspect is significant when addressing Judge Moody's determination that corroboration should be a threshold factor for the admission of the Rosser testimony.

■ Corroboration has been considered an important factor in many of our earlier

---

**2.** (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

....

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence....

Fed.R.Evid. 804(b)(5).

cases. *See Doerr,* 886 F.2d at 956 (that other evidence at trial corroborated the testimony is a factor which supports admissibility); *Snyder,* 872 F.2d at 1356 (where defendant took stand and corroborated testimony of unavailable witness, corroboration adequate to make testimony trustworthy); *Hooks,* 848 F.2d at 797 (declarant's statement trustworthy when made under oath, without coercion, subject to prosecution for perjury, and is corroborated by other testimony or evidence); *Guinan,* 836 F.2d at 358 (guarantees of trustworthiness include fact that testimony was voluntarily given under oath and was substantially corroborated by other independent evidence); *see, e.g., United States v. Feldman,* 761 F.2d 380, 387 (7th Cir.1985); *Boulahanis,* 677 F.2d at 588; *Haywood,* 658 F.2d at 463. In addition, the Sixth Circuit has said that the necessary degree of corroboration will vary with and depends greatly upon the purpose for which the testimony is offered. *See United States v. Barlow,* 693 F.2d 954, 962 (6th Cir.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). Accordingly, in cases where the testimony is offered for a limited purpose, corroboration need not be great. *See id.* But where the testimony is critical to the case, the trial court may require a high degree of corroboration. *See id.; see also United States v. Marchini,* 797 F.2d 759, 753 (9th Cir.1986) ("If the testimony is direct evidence of guilt or critical proof of guilt, other factors, such as corroboration, must weigh heavily in favor of admissibility."), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1288, 94 L.Ed.2d 145 (1987); *United States v. West,* 574 F.2d 1131 (4th Cir.1978).

■ Officer Rosser's testimony appears indispensable to the government's prosecution of Mokol. In barring the testimony, the trial judge may have effectively disposed of the government's case against Mokol. However, the district judge's decision to focus on corroboration with regard to crucial hearsay testimony has support in the case law.

As we noted, the district judge presided over the earlier motion to suppress hearing in the Bartolomei case and he observed the testimony and demeanor of Rosser at that time. He obviously did not believe, as the government does, that "Rosser [was] nothing short of a completely truthful, honest, and cooperative witness." It was within the district judge's discretion to decide that corroboration presented a threshold hurdle; and he carefully reviewed the corroboration evidence presented. The district judge concluded that the forensics evidence was "very weak" and that Mr. Cohen's "impression" that Chief Mokol had altered the report, taken together with Mr. Cohen's vague recollection of the conversation he had with Sheriff Bartolomei and Chief Mokol after Officer Rosser testified, provide "weak corroboration at best."

The evidence proffered by the government to support Rosser's testimony does provide some corroboration that he was truthful in his testimony. We may not have decided the issue of the admissibility of Rosser's testimony in the same way as the district court. But, in a case such as this, where the district judge had the opportunity to observe the challenged statements being made by the now unavailable witness, we must give that judge considerable latitude in his decision of whether to admit the hearsay testimony. Finding no abuse of discretion, we AFFIRM the decision of the district judge.