**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald SEAVOY and Robert M. Seavoy,
Defendants–Appellants.**

**Nos. 92–1894, 92–2132.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 1992.

Decided June 15, 1993.

---

Steven M. Biskupic, Asst. U.S. Atty., Milwaukee, WI (argued), for U.S.

Paul Barrett, Elkhorn, WI (argued), for Ronald Seavoy.

Daniel D. Resheter, Jr., Milwaukee, WI (argued), for Robert M. Seavoy.

Before CUMMINGS and COFFEY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

COFFEY, Circuit Judge.

Robert and Ronald Seavoy were each indicted on one count of aggravated bank robbery in violation of 18 U.S.C. §§ 2 and 2113(a), (d). Ronald Seavoy was indicted on a second count for use of a firearm during a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c). Robert Seavoy entered a plea of guilty; thereafter, the district court enhanced his sentence four levels under the United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(b)(2) for using a firearm

during the bank robbery, and sentenced him to 97 months imprisonment. A jury convicted Ronald Seavoy on the armed robbery count and the use of a firearm count and the court sentenced him to consecutive terms of 78 months and 60 months imprisonment respectively. Robert Seavoy appeals the district court's denial of his motion to withdraw his guilty plea as well as his four-level sentence enhancement under § 2B3.1(b)(2). Ronald Seavoy appeals the admission of Robert's change of plea hearing testimony at his trial. We affirm.

## I. FACTS

On August 19, 1991, brothers Ronald and Robert Seavoy met at a Days Inn motel in Green Bay, Wisconsin, to plan the robbery of Bank North in Pembine, Wisconsin. At this time, Robert Seavoy was residing in Lake City, Florida and Ronald's residence was in Marquette, Michigan. Robert Seavoy checked out of the Days Inn motel on August 20, 1991, at roughly 8:10 a.m. and drove his Dodge truck to meet his brother Ronald at a pre-arranged meeting place in the woods approximately one mile from Bank North. Ronald drove his Volkswagen Sirocco to the meeting place and stripped the vehicle identification number ("VIN") from the auto. At trial, Ronald claimed that he had sold his Volkswagen to an unknown purchaser three days before the robbery. However, Mary Sikkila, the girlfriend of one of Ronald's brothers, Dean Seavoy, testified she saw Ronald driving the Volkswagen two days prior to the robbery. The Seavoy brothers drove in Ronald's Volkswagen to Bank North and entered the bank at approximately 10:20 a.m. At that time, both Robert and Ronald were armed with firearms and ordered the Bank North employees and customers to lie face down on the floor. Roxanne DeLaet, a loan officer at Bank North, testified that one robber, about 5'10" and weighing approximately 165 pounds with a nylon mask over his face, came into her office where she was meeting with a customer, pointed a gun at her, and ordered her to come out of her office and lay down on the floor. DeLaet complied with the order and lay face down on the floor. She stated that her customer also

departed from the office and lay on the floor with the other employees and customers.

Shirley Hanneman, a bank teller, testified that she observed one of the robbers meet Theresa Kerry, a bank employee, returning with the mail, at the bank's back door because the robber apparently heard the door lock turning. Hanneman stated that she watched this robber point a gun at Kerry and order her to lay down on the floor. Hanneman testified that she overheard the robber matching Ronald's description ask where the key to the vault was kept and one robber stated to the other, "They don't have a key, Bob." She further stated that she heard the robber referred to as "Bob" respond, "Put a bullet in one of them and then they will remember." DeLaet testified that she told Kerry to produce the vault key and watched as Kerry followed DeLaet's instruction and opened the bank's vault. Robert and Ronald Seavoy took some $83,870 from Bank North. During the robbery, the bank's video cameras recorded the robbers pointing their guns at the bank's customers and employees and directing them to lie face down on the floor. The Seavoy brothers exited the bank and drove Ronald's Volkswagen approximately one mile into the woods where Robert's truck was parked. After setting the Volkswagen on fire, they drove off in Robert's truck.

Within fifteen minutes of the robbery, a deputy sheriff discovered the burning Volkswagen. Although the Volkswagen had been destroyed and the VIN number had been stripped, deputy sheriffs traced the Volkswagen's ownership through the vehicle's hidden VIN number to Robert John Seavoy, the father of Robert and Ronald Seavoy. At trial, Ronald admitted to ownership of the Volkswagen, but stated the car's title was in his father's name.

Two weeks following the armed robbery on September 3, 1991, Robert was arrested in Bogalusa, Louisiana. In Robert's possession, the law enforcement officers found a 9 mm. handgun and $27,952 cash, of which 51 bills matched Bank North's "bait bill list" of money stolen during the August 20, 1991 robbery. Robert Seavoy was indicted on one count of aggravated bank robbery. Initially,

he pleaded not guilty and offered an alibi defense, but later changed his plea to guilty pursuant to a written plea agreement. In the plea agreement, Robert Seavoy agreed to testify truthfully and completely about the bank robbery at Ronald Seavoy's trial in return for the government recommending a two-level reduction in his sentence for acceptance of responsibility under U.S.S.G. § 3E1.1. The government further agreed to request that the court refrain from enhancing his sentence under § 3C1.1 for obstruction of justice. A guilty plea hearing was held on November 26, 1991 at which Robert testified that he and his brother Ronald robbed Bank North on August 20, 1991, and described in detail how he and his brother entered the bank with face masks on, displayed their weapons, forced the tellers to hand over money, and took cash from the teller drawers. Robert stated that after he and Ronald exited the bank, they drove in the Volkswagen to Robert's truck which was parked in the woods approximately one mile from the bank. Robert testified that he and his brother set the Volkswagen on fire and drove off in Robert's truck. On May 1, 1992, the district court sentenced Robert Seavoy to 97 months imprisonment.

On February 11, 1992, Robert Seavoy refused to testify at Ronald's trial, asserting his rights against self-incrimination under the Fifth Amendment and stating that he would be filing a motion to withdraw his earlier plea of guilty and advancing an alibi defense. On February 21, 1992, Robert filed the motion to withdraw his plea of guilty which the district court denied on March 16, 1992. As a result of Robert's refusal to testify at Ronald's trial, the United States sought to admit the transcript of Robert's testimony from his November 26, 1991 change-of-plea-hearing under Fed.R.Evid. 804(b)(5) to demonstrate that Robert and Ronald Seavoy robbed Bank North on August 20, 1991. The district court admitted the transcript under Fed.R.Evid. 804(b)(5). On February 14, 1992, the jury found Ronald Seavoy guilty of aggravated bank robbery and of using a firearm during a crime of violence.

## II. ISSUES

Ronald Seavoy argues that his case should be remanded for a new trial because Robert's hearsay statements were improperly admitted under Fed.R.Evid. 804(b)(5) and because the admission of this testimony violated his (Ronald's) right to confrontation under the Sixth Amendment. Robert Seavoy argues the district court abused its discretion in denying his motion to withdraw his plea of guilty and erred in enhancing his sentence four levels under Sentencing Guidelines § 2B3.1(b)(2) for using a firearm during the bank robbery.

## III. ANALYSIS

A. *Admissibility of Change of Plea Transcript Under Fed.R.Evid. 804(b)(5)*

■ Ronald Seavoy argues that the district court abused its discretion in admitting the transcript from Robert's change of plea hearing under Fed.R.Evid. 804(b)(5) because Robert's hearsay statements failed to possess the necessary "circumstantial guarantees of trustworthiness." [1] *United States v. Harty,* 930 F.2d 1257, 1263–64 (7th Cir.), *cert. de-*

---

1. "Rule 804. Hearsay Exceptions; Declarant Unavailable ...

 **(b) Hearsay exceptions.** The following are not excluded by the hearsay rule *if the declarant is unavailable as a witness:*

 . . . . .

 **(5) Other exceptions.** A statement not specifically covered by any of the foregoing exceptions *but having equivalent circumstantial guarantees of trustworthiness,* if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the pro-

 ponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, intention to offer the statement and the particulars of it, including the name and address of declarant."
 (emphasis added). The appellant does not challenge the court's determination that elements A, B and C in Rule 804(b)(5) have been met.

*nied, Gurgone v. United States,* —— U.S. ——, 112 S.Ct. 262, 116 L.Ed.2d 215 (1991); *United States v. Doerr,* 886 F.2d 944, 954–55 (7th Cir.1989). We review a district court's rulings on the admissibility of evidence under an abuse of discretion standard. *United States v. Kladouris,* 964 F.2d 658, 663 (7th Cir.1992). "In order for a hearsay statement to be admissible under Rule 804(b)(5), the proponent of the statements must show that the declarant is unavailable and that the statement contains 'circumstantial guarantees of trustworthiness equivalent to those inherent in the more specific exceptions provided under Rule 804(b)(1)–(4).'" *Doerr,* 886 F.2d at 954 (quoting *United States v. Snyder,* 872 F.2d 1351, 1354 (1989). We have recognized that the district court is afforded considerable discretion in its rulings on "whether the hearsay statements contain the necessary circumstantial guarantees of trustworthiness." *Kladouris,* 964 F.2d at 663 (quoting *United States v. Vretta,* 790 F.2d 651, 659 (7th Cir.), *cert. denied,* 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986)). Ronald concedes that his brother Robert was unavailable to testify. Therefore, we turn to the question of whether Robert's testimony had sufficient guarantees of trustworthiness to be admitted under Rule 804(b)(5). In *Doerr,* we enumerated seven factors that should be considered in determining whether hearsay testimony has sufficient guarantees of trustworthiness:

> "[1] the character of the witness for truthfulness and honesty, and the availability of evidence on the issue; [2] whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; [3] the witness' relationship with both the defendant and the government and his motivation to testify ...; [4] the extent to which the witness' testimony reflects his personal knowledge; [5] whether the witness ever recanted his testimony; [6] the existence of corroborating evidence; and, [7] the reasons for the witness' unavailability."

*Doerr,* 886 F.2d at 956 (quoting *Snyder,* 872 F.2d at 1355–56).

■ Ronald contends that the *Doerr* factors reveal how his brother Robert's hearsay testimony failed to contain sufficient guarantees of trustworthiness to be admitted at Ronald's trial under Rule 804(b)(5). We disagree with Ronald's argument and analyze the pertinent factors in *Doerr* to determine whether Robert's hearsay testimony contained sufficient guarantees of trustworthiness to have been properly admitted at Ronald's trial. Ronald argues that Robert's character was called into question because he was under investigation for three other bank robberies in the Upper Peninsula of Michigan. However, the Michigan State Police, who investigated the three bank robberies in their state and in one case caught the robbers, failed to identify either Robert or Ronald Seavoy as being involved in any of these robberies. The record reveals that Robert Seavoy had no criminal record prior to his conviction for the Bank North robbery that could be used to challenge his character for truthfulness. Second, Ronald argues the absence of cross-examination during Robert's testimony in the guilty plea hearing reduces the guarantees of trustworthiness because the prosecutor interrogated Robert with leading questions and fed information to him without objection from defense counsel. The record does, however, reveal that his testimony was given under oath and both the prosecutor and defense counsel questioned Robert about his role in the bank robbery. *See Doerr,* 886 F.2d at 956.

Third, Ronald argues that his brother Robert had the motivation to testify untruthfully and implicate him (Ronald) in the bank robbery because he was desirous of having the government recommend a two level reduction in his sentence under § 3E1.1 for acceptance of responsibility. In addition, Ronald contends that his brother's attempt to recant his guilty plea, reassert his alibi defense and his refusal to testify at Ronald's trial also called into question his trustworthiness. Concerning Ronald's argument that Robert had a motivation to lie, we agree with the district court's characterization of Robert's testimony at his guilty plea hearing that it was a "neutral kind of story" corroborated by the evidence that neither placed blame on Ronald nor described Ronald's role in the offense "in any worse light than the cold hard facts do." The record corroborates Robert's testimony:

(1) motel records showed that Robert Seavoy, who lived in Lake City, Florida, rented a room at a Days Inn in Green Bay, Wisconsin on August 18, 1991, for two days prior to the robbery; (2) telephone records from the Days Inn motel revealed that two calls were made from Robert's room at the motel to Ronald Seavoy's telephone number in Marquette, Michigan; (3) Ronald Seavoy was observed driving his Volkswagen on August 18, 1991, two days before the robbery, even though he told the FBI investigators that he had previously sold it to an unnamed person on August 17, 1991; (4) Ronald's Volkswagen was linked to the Bank North robbery through the VIN number and found burning immediately after the armed robbery; (5) the general physical descriptions of the two disguised bank robbers by Bank North employees Hanneman and DeLaet matched the description of the Seavoy brothers; (6) Ronald Seavoy lied to the FBI in saying that he had no contact with Robert in the two months leading up to the robbery when in fact, Ronald testified that he spoke with Robert on the telephone at the Days Inn in Green Bay, Wisconsin, two days before the robbery on August 18, 1991; and (7) Robert Seavoy was arrested with a 9 mm. handgun and $27,000 cash, which included 51 of Bank North's bait bills stolen in the bank robbery. *See Doerr,* 886 F.2d at 956 (corroborating evidence demonstrates the trustworthiness of hearsay testimony). Moreover, Robert Seavoy's attempt to recant his earlier guilty plea must fail because of the guarantees of trustworthiness surrounding that plea. Before Robert pleaded guilty, the following exchange took place under oath:

"The Court: Mr. Seavoy, before proceeding with my questions, I want you to now understand that you are now under oath. And to the extent that you provide false or untruthful answers to any question put to you by the court or which may be later put to you by your attorney or [the prosecutor] Mr. Biskupic, you may be subjecting yourself to additional criminal penalties for perjury or lying under oath since anything you say can be used against you later in a proceeding for false swearing or perjury. Do you understand that?

The Defendant: Yes, sir.

The Court: Do you believe that you have had sufficient opportunity to discuss the matter pertaining to your proposed pleas sufficiently with [attorney] Resheter?

The Defendant: Yes, sir.

* * * * * *

The Court: And in signing the plea agreement you have in essence told the Court that you have read and understand all of the components of the plea agreement; is that correct?

The Defendant: Yes, sir.

* * * * * *

The Court: ... Mr. Seavoy, has anyone attempted in any way to force you to plead guilty in this case?

The Defendant: No, sir.

The Court: Do you consider your proposed plea of guilty to be a free and voluntary act on your part together with the advice of your attorney?

The Defendant: Yes, sir."

Further, although Ronald Seavoy claims that without Robert's testimony the government could not tie Ronald to the evidence corroborating his role in the bank robbery, we recognize that Robert's testimony was based on his own personal knowledge of the bank robbery. Clearly, Robert was in the best position anyone could be to testify about the armed robbery for he was an active participant in the robbery caper with his brother Ronald. Robert participated in staking out Bank North, entering the Bank with a nylon mask on and armed with a weapon, ordering the patrons and employees to the floor and taking the bank's money from the tellers as well as from their bank drawers. *See Doerr,* 886 F.2d at 956; *Snyder,* 872 F.2d at 1356. Our review of the record reveals that a sufficient number of *Doerr* factors supporting admissibility of Robert Seavoy's testimony at his change of plea hearing under Rule 804(b)(5) were present in this case. We conclude that the trial court did not abuse its discretion in admitting the transcript of Robert Seavoy's testimony at Ronald Seavoy's trial because Robert's testimony

had the required circumstantial guarantees of trustworthiness.

Ronald Seavoy also argues that the admission of Robert's testimony at his (Ronald's) trial violated his Sixth Amendment right to confront and cross-examine his accuser. There is a two-part test to determine whether the admission of hearsay statements violates the defendant's right to confront his accuser. *United States v. Harty,* 930 F.2d 1257, 1264 (7th Cir.1991). "First, it must be clear that the declarant actually made the statement in question." *Id.* (quoting *United States v. Blakey,* 607 F.2d 779, 786 (7th Cir.1979)). Second, "[t]o be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Harty,* 930 F.2d at 1264 (quoting *Idaho v. Wright,* 497 U.S. 805, 822, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638 (1990) (citations omitted)). Under this second test, it must be clear that Robert Seavoy's hearsay statements are "inherently reliable because of the circumstances surrounding them." *Id.* Ronald Seavoy admits that Robert Seavoy made the statements implicating himself and Ronald in the robbery of Bank North. However, he argues that the *Doerr* factors should be applied to the second prong of the *Harty* test to determine the inherent reliability of Robert's testimony. The defendant refers back to his first argument and states in his brief that "six [of the] *Doerr* factors show that Robert Michael Seavoy's hearsay testimony from his February 26, 1991, change of plea hearing should not be admitted under Federal Rule of Evidence 804 because it does not have the necessary 'circumstantial guarantee's [sic] of trustworthiness....'" Def. Br. at 20. We have previously determined through application of the *Doerr* factors and Rule 804(b)(5) that Robert's testimony was sufficiently reliable, thus Ronald's Confrontation Clause argument must also fail because it is nothing but a restatement of an argument we have previously rejected. *See Kladouris,* 964 F.2d at 664.

**B.** *Denial of Motion To Withdraw Guilty Plea*

 Robert Seavoy argues that the district court erred in denying his Fed. R.Crim.P. 32(d) motion to withdraw his guilty plea because he presented a "fair and just reason" for the withdrawal before sentencing. We review the trial court's denial of Robert's motion to withdraw for an abuse of discretion. *United States v. Coonce,* 961 F.2d 1268, 1275 (7th Cir.1992). Fed. R.Crim.P. 32(d) states in relevant part that "[i]f a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, ... the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." The defendant bears the burden of proving the "fair and just reason" exists. *Coonce,* 961 F.2d at 1275; *United States v. Knorr,* 942 F.2d 1217, 1219 (7th Cir.1991). Robert Seavoy claims that pressure from his family and the government which forced him to plead guilty was a "fair and just reason" warranting the withdrawal of his guilty plea. He argues that he asserted his innocence from the time of his arrest on September 2, 1991 until the time the guilty plea was entered on November 26, 1991. The defendant states that the robbery of Bank North was his first involvement with the criminal justice system. It was only after the 51 bait bills were found in his possession and linked to the Bank North robbery that Robert Seavoy claims he made the decision in haste to plead guilty under pressure from his family and the government.

In the change of plea hearing, the trial court asked Robert Seavoy the following:

"The Court: Alright. Have you had in your own mind, Mr. Seavoy, sufficient opportunity to discuss the charge against you with [your attorney] Mr. Resheter?

The Defendant: Yes, sir.

\* \* \* \* \* \*

The Court: ... Mr. Seavoy, has anyone in any way attempted to force you to plead guilty to this case?

The Defendant: No, sir.

The Court: Do you consider your proposed plea of guilty to be a free and voluntary act on your part together with the advice of your attorney?

The Defendant: Yes, sir.

The Court: Now, by pleading guilty to the charge of armed bank robbery as charged, what do you understand to be the maximum penalties that you face?

The Defendant: At this point, I believe it's—I believe it's between 51 and 78 months?

The Court: Alright. Well, we'll get to that matter in a moment, what I'm addressing is what is embodied in paragraph 4 of the plea agreement on page 2, that is, the maximum penalties.

The Defendant: I understand that, sir.

The Court: Alright, what do you understand the maximum penalties to be for the offense charged in the indictment?

The Defendant: 25 years and $250,000 fine."

■ "The only rational manner in which a judge may determine whether a plea is knowingly and voluntarily made, is to observe the defendant's demeanor and responses to the court's questions and to rely on the defendant's sworn answers." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987). In denying Robert Seavoy's motion to withdraw his guilty plea, the district court noted the thoroughness of the change of plea record, that Robert's statements at the change-of-plea-hearing were made under oath, subject to penalty of perjury, and in response to questions from the trial judge, adverse counsel, and the witness's own counsel. Moreover, the trial judge who accepted the original guilty plea had the opportunity once again to observe the defendant when he was called upon to weigh and determine the defendant's contention that he was pressured and coerced into pleading. The judge was able to observe the defendant as he answered the questions of his attorney, the prosecutor, and the court during his attempt to withdraw his guilty plea from some three months earlier. At this time, the judge was able to view the defendant's "verbal and nonverbal behavior ... focusing on [his] facial expressions, attitudes, tone of voice, eye contact, posture

and body movements, rather than [merely] looking at the cold pages of [an appellate record]." *Churchill v. Waters*, 977 F.2d 1114, 1124 (7th Cir.1992). Based on the record before us, including the district court's firsthand observation of the defendant, Robert Seavoy's contention that he was pressured and coerced into pleading guilty is unfounded. We have stated that "voluntary responses made by a defendant under oath before an examining judge [are] binding." *Ellison*, 835 F.2d at 693. When Robert Seavoy asserts that his plea was involuntary, contrary to his statements in the change-of-plea-hearing, he "faces a heavy burden of persuasion." *See United States v. Caban*, 962 F.2d 646, 649 (7th Cir.1992) (quoting *Ellison*, 835 F.2d at 693). During the guilty plea hearing, Robert Seavoy acknowledged that he was waiving his right to a speedy trial, the right to call witnesses on his own behalf, the right to a jury of his peers, and the right to "hear the evidence in the case, that evidence consisting of the exhibits and testimony of witnesses, the witnesses [who] would occupy the same witness chair that you're seated at and through your attorney [you] would have the right to confront those witnesses, that is to cross-examine them." In addition, Seavoy stated that he understood he was foregoing "the right to take the witness stand in [his] own defense ... as well as the right to rely upon the subpoena power of the court and summon witnesses to give testimony as part of any defense." The trial court further determined that the defendant had sufficient time from his arrest until the change of plea hearing to consider his options. We conclude that Robert Seavoy has failed to meet his burden of persuasion and demonstrate under Rule 32(d) any fair and just reason for the court to grant his motion to withdraw the guilty plea.

C. *Robert Seavoy's Four–Level Sentence Enhancement*

■ Robert Seavoy argues that his conduct while robbing Bank North only constituted "brandishment" of a firearm calling for a three-level sentence enhancement, as opposed to a four-level sentence enhancement, for using a weapon during the bank robbery

under U.S.S.G. § 2B3.1(b)(2). We review the district court's four-level enhancement of Robert Seavoy's sentence under a clearly erroneous standard. *United States v. Reynolds,* 900 F.2d 1000, 1004 (7th Cir.1990). Robert Seavoy relies on *United States v. Johnson,* 931 F.2d 238, 240 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991), to argue that his conduct in waving a firearm in the air and pointing it at the bank tellers and customers forcing them to lie down on the floor constituted brandishment of a weapon justifying only a three level enhancement under § 2B3.1(b)(2). Section 1B1.1, comment. (n.1), defines a weapon as being "otherwise used" when "the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." The *Johnson* court held that leveling a gun at the head of a victim and verbalizing a threat is conduct properly classified as "otherwise using" a firearm. *Johnson,* 931 F.2d at 240. The district court relied upon *Johnson* to apply a four-level enhancement to Robert's sentence for "otherwise using" his firearm during the Bank North robbery based on his threat to kill the bank's tellers or customers in addition to pointing a firearm in their faces and at their heads, and directing them to lie face down on the floor at gunpoint. Although the Seventh Circuit has not held specifically what "otherwise using" a firearm constitutes as a sentencing enhancement under § 2B3.1(b)(2), we consider the reasoning in *Johnson* that defines "otherwise using" a firearm persuasive because as in *Johnson,* Robert Seavoy's pointing of a firearm, combined with an explicit threat, amounted to conduct that was more than "brandishing, displaying, or possessing a firearm or other dangerous weapon" under Sentencing Guideline § 1B1.1. *Johnson,* 931 F.2d at 240–41; *see also United States v. Hamilton,* 929 F.2d 1126, 1130 (6th Cir.1991); *United States v. De La Rosa,* 911 F.2d 985, 993 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *United States v. Roberts,* 898 F.2d 1465, 1469–70 (10th Cir.1990). We hold that the district court did not commit clear error in enhancing Robert Seavoy's sentence four levels for "otherwise using" a

weapon during the bank robbery under § 2B3.1(b)(2).

## IV. CONCLUSION

The district court's admission of Robert Seavoy's hearsay testimony at Ronald Seavoy's trial under Rule 804(b)(5) was proper and Ronald Seavoy's conviction is AFFIRMED. The district court's denial of Robert Seavoy's motion to withdraw his plea of guilty and its four-level enhancement of Robert Seavoy's sentence under § 2B3.1(b)(2) is

AFFIRMED.